The complainant, Thomas B. Norvill, filed the original bill in this cause in the Probate Court of Dyer County (which court by special statute has equity jurisdiction) against the Mutual Benefit Health Accident Association of Omaha, to recover for the loss of an eye on a policy insuring against accident and sickness, and also to recover for statutory penalties.
A jury was called for to try the issues of fact submitted by the court, and upon the finding of the jury on the issues of fact a judgment was decreed in favor of complainant and against defendant for the sum of $500 for the loss of the eye, and the sum of $125 penalty, and the costs of the cause.
The case was tried on oral evidence, and motions for a new trial and non obstante veredicto by the defendant were overruled. Upon the action of the court in overruling its motion for a new trial and its motion non obstante veredicto and in rendering judgment against the defendant, the defendant prayed and was granted an appeal to this court. The appeal was duly perfected and errors assigned.
The original bill alleged the issuance of the policy of insurance sued on, and that the premium thereon had been paid; that complainant suffered an injury to his right eye, resulting in the eye having to be taken out; that this injury was caused by a scale of iron or some other *Page 398 
object or substance flying into his eye while he was scraping the lid of a stove at his restaurant in Dyersburg; that an abscess formed in the eye because of said injury, necessitating the removal of the eye. The bill further alleges that the policy provides payment in the sum of $500 for the total loss of either eye. The bill further alleges that complainant had fully complied with the provisions of the policy in making and submitting proofs of the injury, and that defendant wilfully and without any good or sufficient cause refused payment, and as a result, complainant has been put to the expense of employing counsel and other expenses, amounting to the twenty-five per cent penalty provided by statute.
The defendant answered the bill and denied that the injury to the eye was the result of a scale or other foreign substance getting into complainant's eye as alleged in the bill, and alleged that complainant had made material misrepresentations in the application which he submitted to the defendant and upon which the policy of insurance was issued by defendant, and alleged that complainant misrepresented and concealed the true condition in said application, which application was copied into the policy of insurance and made a part thereof.
The answer denied that defendant was liable to complainant for any amount under said policy, and denied that its failure and refusal to pay for the loss of the eye under said policy was not in good faith, but to the contrary, the defendant had a good and sufficient defense to said suit.
At the trial of the cause both parties were requested by the trial judge to prepare and tender issues of fact to be submitted to the jury. After some discussion of the issues tendered by the respective parties, the trial judge made up and submitted to the jury the following issues of fact:
"1. Did the defendant, the Mutual Benefit Health Accident Association contract and agree to indemnify the complainant against the loss of said eye, in the way and manner set out in the policy exhibited to complainant's bill?" To this issue the jury answered, "Yes."
"2. Was the policy in force and effect at the time of the alleged accident?" To this issue the jury answered, "Yes."
"3. Did the complainant, through accidental means, independent and exclusive of disease and all other causes, lose the sight of his right eye?" To this issue the jury answered, "Yes."
"4. Did the complainant make material misrepresentations about his physical and mental condition on December 5, 1930?" To this issue the jury answered, "No." *Page 399 
"5. Did the complainant make material misrepresentations as to medical and surgical advice and treatment prior to December 5 1930?" To this issue the jury answered, "No."
"6. Was the refusal of the defendant to pay made in good faith?" To this issue the jury answered, "No."
"7. If the refusal was not made in good faith, what additional expense, loss and injury was thus entailed?" To this issue the jury answered, "$125."
The material facts, supported by a preponderance of the evidence, as we think, may be stated as follows:
The agent of the defendant Insurance Company solicited complainant to take out the policy, and at the time he solicited the policy he asked the complainant a few questions with reference to his age and place of residence, but did not ask him any questions with reference to his state of health, and did not make out any application, nor did complainant sign any application for the insurance. It appears that within a few days after the agent solicited the policy, the defendant issued the policy sued on. The material portions of the policy and accident indemnities necessary to be noticed are as follows:
 "Part A: If the insured shall, through accidental means, sustain bodily injuries as described in the insuring clause, which shall, independent and exclusive of disease and all other causes, immediately, continuously and wholly disable the insured from the date of the accident and result in any of the following specific losses within thirteen weeks, the Association will pay,
 "Loss of . . . either eye $500."
Under the heading "Additional Provisions," Sub-section C, contained in the policy, it is provided:
 "The copy of the application endorsed hereon is hereby made a part of this contract and this policy is issued in consideration of the statements made by the insured in the application and the payment in advance of Twelve and 50/100 Dollars ($12.50) as first payment; and the payment in advance of Ten Dollars ($10) quarterly beginning with April 1, 1931. . . ."
There follows in the policy copy of the application, which purports to have been signed by the complainant, Thomas B. Norvill. In the copy of this application only two questions and answers are questioned, 11 and 13. Question 11 is: "Are you sound physically and mentally?" Answer to each, "Yes." "Are you maimed or deformed?" Answer to each, "No." "Have you any impairment of sight or hearing?" Answer to each, "No." *Page 400 
Question 13 is as follows: "Have you received medical or surgical advice or treatment or had any local or constitutional disease within the past five years?" The answer to this question is, "No."
As before stated, we think it clear from the record that the complainant did not sign this application, a copy of which is carried into the policy, but it was evidently signed by the insurance agent, and without the knowledge, acquiescence or consent of complainant. The complainant testified that when the policy was delivered to him he took it to his home and put it among his papers without reading it, and explained that he knew that it was a policy for accident and sick benefits and that he relied upon the agent's statements with reference to the policy. He did not know that a copy of an application was included in the policy. He could have discovered this by examining the policy, and especially since it is provided in the policy that the application is made a part of the policy contract.
On January 26 or 27, complainant, while engaged in scraping dirt and rust from a stove lid at his restaurant, suffered an injury to his eye by a flake of either iron or some other substance striking him in the eye. This caused him considerable immediate pain, and he washed his eye with water, and getting no relief, he went to his home and there washed his eye with peroxide and boric acid. He got some relief, but was still suffering from the eye. He thought he got the object out of the eye, but was not sure as to this. He never saw the object, but after using the boric acid and peroxide he got relief. In a day or two following, and while he was still suffering from the eye, it was examined by Dr. Watson, his family physician, and by Dr. Brewer, an eye specialist in Dyersburg. On examination it was discovered that he had a bad ulcer on the cornea of his right eye, and this continued to become more serious until it ultimately became necessary to remove the eyeball from the right eye, resulting in total loss of sight in the right eye. After the loss of his eye, he made request for blanks upon which to make out the proofs of loss as required by the policy, and these proofs of loss were made out, and sent to the Company with certain affidavits and statements made by the attending physicians.
Upon investigation, the defendant Insurance Company refused to pay the claim, on the grounds that the insured had made misrepresentations in the application attached to and made a part of the policy, in that he had stated in answer to Question 11 that he did not have any impairment of sight or hearing, when as a matter of fact he had for many years had trachoma, which is granulated eye-lids, and that the loss of the eye was not the result of the foreign substance getting into the eye, independent of any other disease or cause, and because he had falsely answered Question 13 wherein he said that he had not *Page 401 
received surgical advice or treatment or had had any local or constitutional disease within five years before the date of the application, when, as a matter of fact, he had been treated by his physician for malaria and also for rheumatism within the period of five years.
The assignments of error by appellant are numerous, fifteen in number, and we deem it unnecessary to take up and dispose of each of the assignments of error separately, since the questions presented by the several assignments of error may be disposed of collectively.
By the first assignment of error it is said that the court erred in overruling defendant's motion for a directed verdict at the conclusion of the evidence, and under this assignment it is urged that the proof is uncontradicted that the plaintiff did not lose his eye as a result of the accident, independent of all other diseases and causes, and second, because the plaintiff testified, and the evidence is uncontradicted, that plaintiff made material misrepresentations in his application, in that, (a) he had no medical treatment within the past five years, (b) that he had no impairment of vision and that he was sound physically and mentally on the date of the application.
The second, third, fourth and fifth assignments are directed to the action of the court in not submitting certain issues of fact tendered by the defendant.
The sixth, seventh and eighth assignments complain at the action of the court in submitting the fourth, fifth, and sixth issues to the jury, on the ground that these issues, in the state of the record presented questions of law to be determined by the court, and did not present issues of fact to be decided by the jury.
The ninth, tenth, eleventh, twelfth and thirteen assignments go to the action of the court in refusing to instruct the jury to answer certain issues of fact as requested by the defendant.
The fourteenth assignment is directed to the charge of the court with reference to issue No. 4 submitted to the jury, wherein the court charged the jury on said issue as follows: "Material misrepresentations are such misrepresentations of facts or concealment of facts that would increase the risk of loss. It is the duty of the insured to disclose to the insurer such illness which would increase the risk of loss prior to the delivery of the policy."
By the fifteenth assignment the action of the court in overruling defendant's motion for a decree notwithstanding the verdict of the jury is challenged as being error.
The trial judge held that the acceptance of the insurance policy containing copy of the application with the questions and answers therein set out, was, in effect, ratifying the application, even though the insured did not actually make such answers and did not sign *Page 402 
or authorize the agent to sign his name to the application. In the view we have taken of the case it becomes unnecessary that we decide whether the trial judge was in error in so holding. He permitted proof by the defendant to the effect that at the time the application was signed and at the time the policy was delivered, the insured had trachoma, which is explained to be granulated lids. He also permitted the defendant to prove on cross-examination of certain of plaintiff's witnesses and by the evidence of Dr. Watson, that the insured had within a period of five years before the issuance and delivery of the policy, had certain medical attention, at one time for malaria and at another time for rheumatism.
Plaintiff testified that he did not have any trouble with his eyes at the time the application for insurance was solicited, and at the time the policy was issued and delivered. However, it is shown by other evidence in the record that he had an old case of trachoma, but that it had been inactive for many years. The condition is referred to by the two doctors as an arrested condition. Dr. Watson attributed the abscess on the cornea of the right eye to the scale or foreign substance that had gotten into the eye. Under certain hypothetical questions submitted to Dr. Brewer and also to Dr. Watson, they were of the opinion that if the scale had been promptly washed out by the use of boric acid solution and did not stick to the cornea of the eye, that it would not have caused the abscess. Dr. Watson testified that if the foreign substance had occasioned a scratch on the cornea that it could have resulted in the abscess. He attributed the abscess to the foreign substance which had gotten into the eye, and not to trachoma. The eye specialist, Dr. Brewer, stated in answer to the hypothetical question, that if the disease to the eye later referred to as trachoma, or granulated lids, was in an active state, that he would attribute the abscess to both, trachoma and the foreign substance which had gotten into the eye. However, all the evidence in the record is to the effect that the old case of granulated lids had not given the insured any trouble for many years, and it was not in an active stage and had not been for many years, but was in an arrested stage and had been for a long time prior to the injury to the eye resulting from the scale or other foreign substance getting into the eye.
We do not think that the evidence is uncontradicted on this question, and that it was proper that the issues be submitted to the jury. Plaintiff testified that he had not had any trouble with his eyes for a number of years. Dr. Watson states that he was his family physician and that he had not noticed any disease of the eye for a long time, and that the trachoma was in an arrested stage.
On the question of the refusal of the trial judge to submit the issues tendered by the defendant, we are of the opinion that issues *Page 403 
3, 4 and 5 submitted to the jury, fully presented the issues of fact to be decided by the jury. By the third issue the court submitted to the jury the following: "Did the complainant, through accidental means, independent and exclusive of disease, and all other causes, lose the sight of his right eye?" This is in the exact language of the question 11 contained in the application which was copied into the policy. After considering the issues tendered by the respective parties, the trial judge made up the issues which were finally submitted, and we think these issues fully presented all questions necessary for a fair and proper determination of the questions involved. It is the duty of the insured when he signs an application or accepts the policy, if he knows or has any reason or ground to believe that he has any disease or is in unsound health, that he should make a fair disclosure of the facts to the insurer. Knights of Pythias, v. Rosenfield, 92 Tenn. 508, 22 S.W. 504; Harris v. Insurance Co., 130 Tenn. 325, 170 S.W. 474.
A misstatement in the application which would influence the judgment of the insurer in issuing the policy, is a material misrepresentation. Lauderdale v. Ins. Co., 94 Tenn. 635, 30 S.W. 732; Volunteer State Life Ins. Co. v. Richardson,146 Tenn. 589, 244 S.W. 44; Mutual Life Ins. Co. v. Dibrell,137 Tenn. 528, 194 S.W. 581; Metropolitan Life Ins. Co. v. McGowan,2 Tenn. App. 341.
It has also been held that whether a misrepresentation increases the risk for insurance is a question of law for the court and not a question of fact for the jury. Mutual Life Ins. Co. v. Dibrell, 137 Tenn. 529; Volunteer State Life Ins. Co. v. Richardson, 146 Tenn. 589; Hunter v. Guaranty Co., 129 Tenn. 572, 167 S.W. 692.
And it is also true that when the uncontradicted evidence discloses that there have been made material misrepresentations in the application for the insurance, the case should not be submitted to the jury, but the court should direct a verdict for the defendant. Mutual Life Insurance Co. v. Mrs. Annie C. Dibrell, 137 Tenn. 528; Metropolitan Life Ins. Co. v. McGowan,2 Tenn. App. 341.
In the present case the insured did not sign the application, nor did he authorize the answers as written in the application. The questions in the application were evidently answered by the agent, Wood, who was the agent of the Insurance Company. We think it is also true that when the policy was delivered to the insured that he did not read the policy and did not discover that a copy of the purported application was contained in the policy. Immediately upon its delivery to the insured, he put the policy away among his papers, knowing that it was an accident and sick benefit policy, and he evidently relied upon the statements made to him by the agent, Wood, as to the protection given him by the policy. However, it was his duty to read the policy and to discover the application which had been copied into and made a part of the policy contract. If *Page 404 
there were material misrepresentations contained in the application it was his duty to disclose this to the Company and to the end that the policy would be taken up if the Company issuing same so desired.
We are, therefore, of the opinion that this suit must depend upon whether or not there were such material misrepresentations made or set forth in the application, a copy of which was contained in the policy at the time it was delivered, as to make the policy void. We think that this, under the facts as disclosed by this record, would be a question to be submitted to the jury. The old case of trachoma had been inactive for many years, and had not given the insured any considerable trouble at any time. This would indicate that it had never been a serious case of granulated lids. He had never had his eyes treated for that disease. Certainly there was nothing in the condition of his eyes at the time the insurance policy was delivered that would warrant the insured to believe that he had any present disease of the eyes. He at least so testified. Both the doctors testified in substance that the trachoma was in an arrested state, and Dr. Watson, the family physician of the insured, testified that he had not noticed for some years that the insured had this disease. With this evidence in the record we are of the opinion that it is a question of fact to be submitted to the jury, and that it is not such a disease, or such a material misrepresentation, that would make it a question of law for the determination of the court.
When all the evidence is read, and given proper weight and consideration, we cannot escape the conclusion that the loss of the eye by plaintiff was the result of the iron scale or other foreign substance getting into the eye and scratching the cornea or ball, causing the formation of the ulcer. There was no inflammation of the eye lid. The old trouble, trachoma, was not active and had not been for many years, and it is highly improbable that in its arrested stage, if not cured state, it had anything to do, or was the cause or one of the causes of the abscess which formed on plaintiff's eye as a result of having been struck in the eye by this scale or substance, which gave him such pain immediately after it struck his eye and continued to pain him more or less until the abscess formed. It is true, he states that he got some relief from use of the boric acid solution and peroxide, but it was clearly temporary relief, and even though he succeeded in washing it out with these solutions, it is more probable than otherwise that the cornea or ball of the eye was scratched and that infection resulted, causing the abscess to form. This, we think, makes an issue of fact to be submitted to the jury. We are also of the opinion that the jury was well warranted under the facts in returning the answers to the issues 1, 2, 3, 4 and 5.
By certain of the assignments of error it is said that there is no evidence to warrant the finding of the jury, concurred in by the *Page 405 
trial judge, that a failure to settle or pay the claim without suit was not in good faith.
We are of the opinion that the defense was made in good faith by the Insurance Company, and if so, the statutory penalty should not have been allowed. We think it clear from the record that the Insurance Company in good faith denied liability. The mere fact that it refused payment of a claim, and that the suit on the claim resulted adversely to the contention of the defendant, would not of itself warrant a conclusion that the denial or refusal was not in good faith. Under the facts as disclosed by the record, we are of the opinion that the refusal to pay was not wilful, or that the Company was acting in bad faith in contesting the claim.
We are of the opinion that all the assignments of error, except the assignments going to the penalty, must be overruled, and that complainant is entitled to a judgment under the terms of the policy for the sum of five hundred dollars ($500), with interest thereon from the date of the judgment below, but is not entitled to recover the one hundred twenty-five dollars ($125) awarded by the court and jury as a penalty, and that the assignments of error on this question should be sustained. It follows that judgment will be rendered here for the sum of five hundred dollars ($500), interest thereon from date of the judgment below.
We are further of the opinion that the cost of this appeal should be paid, one-fourth by appellee, and three-fourths by appellant and surety on the appeal bond. Judgment will be entered here accordingly.
Heiskell and Owen, JJ., concur.