DeFord *v.* National Life & Accident Ins. Co.

(*Nashville,* December Term, 1944.)

Opinion filed February 3, 1945.

Rehearing Denied March 3, 1945.

258

Paul Williams and Jos. L. Lackey, both of Nashville, for plaintiff.

J. L. Reynolds, of Nashville, for defendant.

Mr. Justice Chambliss delivered the opinion of the Court.

This is an action to recover on two policies of insurance aggregating $555 on the life of plaintiff's husband, Arthur DeFord, who died of a heart ailment on the 25th of January, 1943. Both policies were of the type commonly known as industrial, issued without medical examination, and with no obligation, other than the return of premiums received, unless the applicant insured thereby is in sound health on the date of issue.

■■ This Court has approved and enforced the conditions contained in this form of industrial insurance contracts. In *Metropolitan Life Ins. Co.* v. *Chappell*, 151 Tenn. 299, 310, 269 S. W. 21, 25, Mr. Justice Hall said:

"The application of the condition in the policy that the defendant assumed no obligation, unless the insured was in sound health at the date of the policy, is not controlled by the insured's knowledge or lack of knowledge that she was not in sound health. The existence of life and sound health in the insured, at the date of the policy, was a condition precedent to the promise of insurance," citing cases; and further (151 Tenn. at page 311, 269 S. W. at page 25), "It is the fact of sound health of the insured which determines the liability of the defendant in this character of policies, not apparent health, or his or any one's opinion or belief that he was in sound health."

This condition precedent is plainly expressed on the face of these policies. It is also expressly provided that

"no agent shall have the power or authority to waive, change, or alter any of the terms or conditions of this policy."

The defense relied on was a breach of this condition in that the insured was not in sound health at the time of making application for the insurance and was fully aware of it. This is not disputed. He had been suffering for some time with a heart affection complicated by syphilis, for which he had been receiving clinic treatments. But, in response plaintiff relied on waiver of this condition by the agent who solicited the insurance, and invoked the rule of imputed knowledge by the Company.

On the trial before a jury plaintiff, wife of the insured, supported by another witness, testified that when solicited to take the insurance DeFord informed the agent of the Company that he had "bad blood," heart trouble and had been operated on for hernia and that the agent had accompanied Mr. DeFord to the City Hospital where he was accustomed to go to take shots for his blood trouble; but that the agent told DeFord that because of this condition of his health "he needed it [the insurance] more than ever"; that with this information the agent filled out the application containing false representations of sound health, DeFord signed them and the policies were procured from the Company and delivered to him. The agent denied all knowledge that Mr. DeFord was in unsound health, or that he had been so informed. The only medical witness testified that the insured had been suffering from heart disease, complicated by latent syphilis, for which he had been receiving treatment at the public clinic, and that he attributed his death to these causes. It was further developed on the trial that these parties were carrying and had carried this class of insurance

and were apparently familiar with such policies and their requirements.

Overruling a motion for a directed verdict for the defendant, the trial Judge submitted to the jury the question whether or not the evidence sustained the contention of the plaintiff that the agent knew of and, therefore, waived the condition of sound health, thus conveying notice to and binding the Company. The jury found for the plaintiff. The trial Judge granted a motion for a new trial, sustained defendant's motion for a directed verdict theretofore made and dismissed the suit, and plaintiff appealed.

The Court of Appeals found the facts substantially as above stated and made this comment: "It seems evident from the record that Arthur DeFord was in bad health at the time the policies were written, but there was conflicting testimony as to whether the agent Spivey knew this to be true."

Holding that this conflict in the testimony presented a material issue for the jury, and apparently assuming that the insurer Company would be chargeable with the knowledge of its agent, the Court of Appeals reversed and remanded. This Court granted *certiorari*.

Petitioner Company insists that there is no evidence that it had any notice, actual or constructive, of this unsound condition of the insured's health at the time of the issuance of these policies; that, even if its agent had such knowledge, the knowledge of its agent is not imputable to it under the proof in this case; that it did not waive these conditions of the policies involved, the soliciting agent had no authority to do so, and it is not estopped to rely thereon; and that the Court of Appeals erred in reversing the judgment and remanding the case.

It is plausibly argued that on the undisputed facts in this record the defendant Company, as a matter of law,

is not chargeable with notice of any knowledge which may have been conveyed to this agent, or bound by any attempted waiver on his part, and that it is, therefore, immaterial to determine whether or not such knowledge was, in fact, conveyed to him.

There is no evidence and no insistence that the Company had any actual notice or knowledge of the unsound health of the insured, or that the agent had actually been authorized to waive this condition.

Not only is there no showing of such actual authority, but immediately following the express provision that, "if the insured is not alive or is not in sound health on the date hereof," it is provided that "this policy contains the entire agreement between the Company and all parties in interest. Its terms cannot be changed, or its conditions varied, except by a written agreement signed by the President or the Secretary of the Company. No other person shall have the power to make or alter this contract, waive forfeitures," etc. The asserted right of recovery must, therefore, rest upon the theory that this agent having, in violation of this express withholding from him of power, with knowledge of the unsound health of the insured, waived this vital condition by delivering these policies, his principal, the Company, was chargeable with knowledge of his action in this regard, and, therefore, bound thereby, in application of the doctrine of estoppel.

The general rule is, as said by the Court of Appeals, "that where the insurer at the time of the issuance of a policy of insurance, has knowledge of existing facts which, if insisted upon, would invalidate the contract from its very inception, such knowledge constitutes a waiver of conditions in the contract inconsistent with the known facts, and the insurer is estopped thereafter from asserting the breach of such conditions," (*Life & Casualty*

*Insurance Co.* v. *King,* 137 Tenn. 685, 195 S. W. 585, 589, and cases cited); and, as also said in the same case, "the same rule applies where the agent soliciting the insurance knows of the existing facts, and such knowledge is imputable to the insurer."

While the general rule is as above stated, see 2 Am. Jur., p. 286 et seq., and annotations in 88 A. L. R., p. 104, there are equally well recognized exceptions and limitations, which we find to be determinatively applicable here.

In 2 Am. Jur., at page 291, after noting certain of these limitations, the text proceeds: "Moreover, as the rule is intended to protect those who exercise good faith, and not as a shield for unfair dealing or to enable third persons to use the agent to further their own frauds upon the principal, it will not apply in favor of one acquainted with circumstances plainly indicating that the agent would not advise his principal, as where the agent is known to be acting adversely to the principal, or where the third person seeking to charge the principal is in collusion with the agent." Cases are cited in the notes.

The dictates of justice have injected into the rule of imputed knowledge this exception, which is thus expressed in a headnote to the opinion of the Supreme Court of the United States in *Mutual Life Ins. Co.* v. *Hilton-Green et al.,* 241 U. S. 613, 36 S. Ct. 676, 60 L. Ed. 1202:

"The rule which imputes an agent's knowledge to the principal does not apply when the third party was acquainted with the circumstances plainly indicating that the agent would not advise his principal." And this is added (241 U. S. at page 623, 36 S. Ct. at page 680, 60 L. Ed. 1202):

"The rule is intended to protect those who exercise good faith, and not as a shield for unfair dealing," citing cases and Mechem's Agency (2d Ed.), Sec. 1815. The

Court said further, applicable to the plainly proven facts of the instant case:

"The assured at the least consciously permitted an application containing material misrepresentations to be presented by subordinate agents to officers of the insurance company under circumstances which he knew negatived any probability that the actual facts would be revealed; and later he accepted policies which he must have understood were issued in reliance upon statements both false and material. He could claim nothing because of such information in the keeping of unfaithful subordinates."

█ The principle applied in that case, where the burden was on the Company to establish, as a defense, misrepresentations in the application, applies even more forcefully here where the burden is on the plaintiff to show an intention with full knowledge to waive the condition.

In *American National Bank* v. *Miller*, 6 Cir., 185 F. 338, the Court said that the rule imputing to the principal notice to the agent does not apply when it was to the interest of the agent to conceal the fact or information.

█ This rule of exception is thus expressed in 3 C. J. S., Agency, sec. 262, pages 196, 197: "The rule that notice to an agent is notice to the principal is not one of universal application and it does not apply . . . when the third person knows there is no foundation for the ordinary presumption of communication, and he is acquainted with circumstances plainly indicating the agent will not advise the principal." Among other cases cited in the notes is *Anderson* v. *Missouri State Life Ins. Co.*, 6 Cir., 69 F. (2d) 794, where it is held that an agent will not be presumed to communicate to his principal information which it is to his interest to conceal; *Ohio Millers'*

*Mut. Ins. Co.* v. *Artesia State Bank*, 5 Cir., 39 F. (2d) 400, in which it was said that the principal is not chargeable with the agent's knowledge when the interest of the agent would prevent disclosure—in that case the agent's desire to make a sale in which there was a profit to him (In the case at bar the agent was interested chiefly in selling the insurance); *Scott County Milling Co.* v. *Powers,* 112 Miss. 798, 73 So. 792, holding the rule is never applied when the agent has an adverse interest.

In *Bacot* v. *South Carolina Loan & Trust Co.*, 132 S. C. 340, 127 S. E. 562, 564, the Court thus well stated this exception: "But the rule imputing to the principal the agent's knowledge is not applicable . . . where the knowledge is such that, according to human nature and experience, the agent is certain to conceal, or where the agent is acting in an adversary relation to the principal, . . . or some third person in his own interest which would be defeated by disclosure."

Both phases of the exception recognized by these authorities apply here. Certainly, "according to human nature and experience," it must be conceded that this agent would conceal from his Company that he had information that this applicant was in unsound health, that the written report he was submitting was exactly contrary to the statements and answers to questions the applicant had made as to his health condition. This much is not open to dispute. And it is equally clear from the testimony of Mrs. DeFord herself, which we have set out, that the applicant and his wife-beneficiary were fully "acquainted with circumstances plainly indicating" that this agent would not advise his principal of the facts.

By way of proving that this agent was personally and selfishly interested in the writing of these policies, it was brought out on cross examination of the agent by counsel

'for plaintiff that he realized $21 from the writing of this insurance and this is the explanation suggested of why he insisted that the insured take the policies, despite unwillingness indicated by the insured, doubtless realizing that he was not physically eligible for this insurance, and knowing full well that, if the truth should be made known to the Company, the policies would not be issued.

■ It appears from the testimony of Mrs. DeFord and of the witness which she introduced to the circumstances under which these policies were issued that these parties had had other experience in taking out and carrying similar insurance and were, for this reason, advised that sound health was an essential requisite. This is cumulative evidence supporting the legal deduction of knowledge of this and other conditions of the policy with which the insured was chargeable under well settled rule.

■ It is the general rule that one who enters into a written contract, negotiated by an agent, is presumed to know the contents of the writing and is bound thereby— although peculiar and exceptional circumstances may affect the application of this general rule.

■ ■ As before shown, this contract of insurance carried, in plainly expressed terms, a positive provision that "its terms cannot be changed or its conditions varied, . . . except by a written agreement signed by the President or Secretary of the Company." And that "No other person shall have the power to make or alter this contract, waive forfeitures," etc. Here is an express limitation which precludes reliance by the insured, or his beneficiary, upon the alleged oral waiver by the agent. The insured is conclusively presumed to have had knowledge of this expressed limitation upon the authority of the agent. We quote from 2 Am. Jur., p. 81: "A third person may also be given notice of the limitations of the

agent's authority by reason of the terms of some stipulation in the contract which he executes with the agent." Illustrations of cases supporting this text are *Morgan* v. *American Cent. Ins. Co.*, 80 W. Va. 1, 92 S. E. 84, L. R. A, 1917D, 1049, and *Crawford & Gatlin* v. *M. Livingston & Co.*, 153 Ky. 58, 154 S. W. 407, 44 L. R. A. (N. S.) 640. The opinion in the first of these cited cases is a particularly full discussion of this question, with a review of many authorities.

It is the general rule that "a person cannot avoid a written contract into which he has entered on the ground that he did not attend to its terms, that he did not read the document." 13 C. J., p. 370, citing numerous cases, among others, *McKay* v. *Louisville, etc., R. Co.*, 133 Tenn. 590, 182 S. W. 874, 876; see, also, 17 C. J. S., Contracts, sec. 137; also, 32 C. J. 1092 and 1129, 1130, where referring especially to insurance policies, it is said that the insured "is conclusively presumed to have knowledge of, and to have assented to all the terms, conditions, limitations, provisions and recitals in the policy," citing many cases. It is true that the wife of the insured says that "he couldn't read anything to amount to anything at all," and that, while he affixed his signature to the application for the policy, he did not and could not read it. This does not, under the rule, in the absence of fraud, justify repudiation of the contents of his contract. In the *McKay Case* above cited the Court said, "the plaintiff is undoubtedly bound in law, whether he read the contract or not," citing *Railroad Co.* v. *Stone et al.*, 112 Tenn. 348, 79 S. W. 1031, 105 Am. St. Rep. 955; *Louisville & N. Railroad Co.* v. *Smith*, 123 Tenn. 678, 134 S. W. 866.

While the wife says the insured did not read the applications, which he signed, there is no testimony that he did not otherwise learn the contents of the policies which

he accepted, held in possession and paid many premiums on from time to time. If he could not and did not in fact read them himself, it was his duty to have them read to him and thus learn their contents.

The general principle involved was thus stated by a high authority many years ago:

"It will not do for a man to enter into a contract, and, when called upon to respond to its obligations, to say that he did not read it when he signed it, or did not know what it contained. If this were permitted, contracts would not be worth the paper on which they are written. But such is not the law. A contractor must stand by the words of his contract; and, if he will not read what he signs, he alone is responsible for his omission." *Upton* v. *Tribilcock,* 91 U. S. 45, 50, 23 L. Ed. 203.

Applicable in this connection is this statement from the text of 17 C. J. S., Contracts, sec. 139 supported by numerous cited cases:

"A party's mere ignorance, occasioned by his limited intelligence and understanding of the language and of the contents of the contract which he voluntarily executes, is not, in the absence of fraud, a ground for avoiding it, although it is different from what he supposed. So, where a person cannot read the language in which a contract is written, it is ordinarily as much his duty to procure some person to read and explain it to him before he signs it as it would be to read it before he signed it if he were able so to do, and his failure to obtain a reading and an explanation of it is such gross negligence as will estop him from avoiding it on the ground that he was ignorant of its contents." Many cases are cited.

 It is further said that the fact that a person is unable to read creates no presumption that he was ignorant of the contents of a contract signed by him.

268

This is not a proceeding in which it is sought to reform a contract, on the ground of mutual mistake or other equitable grounds; nor is it a case in which there is any charge of fraud on the insured in connection with the transaction. The only fraud suggested on this record is the alleged fraudulent effort of the agent of this Company to bind his principal, the Company, with the knowledge of the insured, to a contractual liability which he knew was.beyond his authority, for his own personàl gain and the resultant benefit to the insured, who had actual knowledge that the condition of his health precluded his insurance, and with at least constructive knowledge of the limitations imposed by the contract itself upon the authority of the agent with whom he was dealing.

In the instant case, while the insured signed the application, he did not sign the policy proper, which, however, he accepted and retained. But, the obligation above stressed to read, or otherwise acquaint oneself, with the contents of a contract which hè signs, applies alike to a contract which he does not sign, but accepts and relies on. This is well settled in this jurisdiction. We have repeatedly so held. *Alfred* v. *Bankers' & Shippers' Ins..Co.,* 167 Tenn. 278, 68 S. W. (2d) 941; *Cooley* v. *East & West Ins. Co.,* 166 Tenn. 405, 410, 61 S. W. (2d) 656; *Foster* v. *Illinois, etc., Ins. Co.,* 156 Tenn. 436, 300 S. W. 7; *Standard Grocery Co.* v. *National Fire Insurance Co.,* 161 Tenn. 640, 32 S. W. (2d) 1023; *Dickens* v. *St. Paul Fire & Marine Ins. Co.,* 170 Tenn. 403, 95 S. W. (2d) 910; *Norvill* v. *Mutual Benefit, etc., Ass'n,* 14 Tenn. App. 396 (*certiorari* denied by this Court). In the last cited case, Judge SENTER, after finding that the insured did not read the policy when delivered to him and did not discover that the application, which had been prepared by an agent, and contained false representations, was contained in

the policy, said, in point here (14 Tenn. App. at page 403):

"Immediately upon its delivery to the insured, he put the policy away among his papers, knowing that it was an accident and sick benefit policy, and he evidently relied upon the statements made to him by the agent, Wood, as to the protection given him by the policy. However, it was his duty to read the policy and to discover the application which had been copied into and made a part of the policy contract. If there were material misrepresentations contained in the application it was his duty to disclose this to the Company and to the end that the policy could be taken up if the Company issuing same so desired."

So that, we have here a case in which, not only was the rule not applicable which imputes the knowledge of the agent to his principal, but in which the insured was chargeable with knowledge that the authority of this agent to waive the conditions of the policy was denied by the express terms of the contract.

In this view it becomes unnecessary to remand the case for the jury to pass on the disputed question whether or not the agent knew of the unsound health of the insured. Conceding his knowledge of it, the Company was not bound thereby for the reasons set forth above, for which reasons the judgment of the Court of Appeals must be reversed and the action dismissed.