## JEFFERSON STANDARD LIFE INS. CO. v. OMO-HUNDRO.—204 S. W. (2d) 185.

Middle Section. July 27, 1947.

Petition for Certiorari denied by Supreme Court, January 11, 1947.

Thomas G. Watkins, of Nashville, for plaintiff in error.

Tyree B. Harris, III, and Walker & Hooker, all of Nashville, for defendant in error.

HICKERSON, J. John Moten Omohundro brought this suit against Jefferson Standard Life Insurance Company to recover disability benefits under a policy of insurance issued to him by defendant.

Defendant's demurrer was overruled. It pleaded the general issue; and also filed several special pleas. Special plea No. IX is:

"The defendant for further plea says that plaintiff has never furnished to the defendant due proof:

" '(a) That he has become totally disabled by bodily injuries or disease and will be permanently, continuously and totally prevented thereby for life from pursuing any occupation or employment whatsoever for remuneration or profit, or

" '(b) That he has become totally disabled by bodily injuries or disease and has been continuously and wholly prevented thereby for three or more consecutive months

from engaging in any occupation or employment whatsoever for remuneration or profit.' "

Plaintiff joined issue on the special pleas, and the case went to trial before judge and jury.

Defendant's motion for directed verdict was overruled.

The jury found the issues in favor of plaintiff, and judgment upon the verdict was entered in his favor. Defendant appealed in error here.

Counting subdivisions, defendant has assigned fifty-one errors in this court. It is not necessary for us to respond to all these specifications. We are going to dispose of the appeal on two questions which we consider to. be determinative:

(1) Did plaintiff furnish defendant with "due proof" of his disability as required by the terms of the policy?

(2) Did defendant waive its right to rely upon the failure of plaintiff to furnish "due proof" of his disability as a defense to this suit?

The policy was issued on July 12, 1927. It contains the following provisions:

"If after one full annual premium shall have been paid on this policy, before default in the payment of any subsequent premium, and before the anniversary of this policy on which his age at nearest birthday is sixty years, the insured shall furnish to the company due proof

" (a) That he has become totally disabled by bodily injuries or disease and will be permanently, continuously and totally prevented thereby for life from pursuing any occupation or employment whatsoever for remuneration or profit, or

" (b) That he has become totally disabled by bodily injuries or disease and has been continuously and wholly prevented thereby for three or more consecutive months from engaging in any occupation or employment whatso-

ever for remuneration or profit, the company by endorsement in writing upon this contract will agree to waive the premiums which shall become payable after receipt and approval of said proof, and will agree to pay to the insured for each completed month of such disability after receipt and approval of said proof and during the further continuance of such disability, a monthly income of one per cent of the face amount of this policy, during the lifetime of the insured prior to the maturity of this policy as an endowment or death claim. But no disability income will be paid or premium waived for any period of disability which preceded receipt of written notice of such disability at the Home Office of the Company.''

Similar provisions in insurance policies have been considered and construed by our Supreme Court in numerous decisions. Walters v. Life Insurance Company, 159 Tenn. 541, 20 S. W. (2d) 1038; Hall v. Acacia Mutual Life Association, 164 Tenn. 93, 46 S. W. (2d) 56; Pacific Mutual Life Insurance Company v. Hobbs, 168 Tenn. 690, 80 S. W. (2d) 662; Massachusetts Mutual Life Insurance Company v. England, 171 Tenn. 104, 100 S. W. (2d) 982; Jones v. Equitable Life Assurance Society of U. S., 177 Tenn. 644, 152 S. W. (2d) 249.

In Walters v. Life Insurance Company, supra, opinion by Justice McKinney, the court held the insurance company was not liable for the indemnity benefits, and the premiums were not waived, until the insured filed proof of his disability with the insurer.

In Hall v. Acacia Mutual Life Association, supra, opinion by Justice Chambliss, the court followed the foregoing rule announced in Walters v. Life Insurance Company; and further held that the insured would not be excused from filing the required proof because he was unable to do so on account of sickness, following the deci-

sion of the Court of Appeals in Wolfe v. Mutual Life Insurance Company, 3 Tenn. App. 199.

In Pacific Mutual Life Insurance Company v. Hobbs, supra [168 Tenn. 690, 80 S. W. (2d) 663], opinion by Justice DeHaven, the court, following its former decisions, said: "Permanent total disability does not alone put into operation the premium waiver clause of the poiicy. This clause is not rendered operative until the notice required by the policy is given. The provisions of the policy with reference to disability benefits and waiver of premiums are plain and unambiguous. It is when the insured gives the company the required notice of his permanent total disability that his liability for future premiums ceases and the right to monthly indemnity accrues."

The court then went one step further and held that the insanity of the insured did not excuse the failure to furnish the required proof of loss.

In Massachusetts Mutual Life Insurance Company v. England, supra, opinion by Justice McKinney, the insured filed proofs of disability with the insurer, stating several diseases as causes of his disability. Tuberculosis was not included in the proof of losss filed with the company as a ground of insured's disability. The trial court admitted evidence of tuberculosis as a cause of insured's disability. The Supreme Court held such evidence should have been excluded because tuberculosis did not appear as a ground of disability in the proof which was filed by the insured with the insurer. The court said [171 Tenn. 104, 100 S. W. (2d) 983]: "While delay in giving notice and furnishing proofs in the requisite time, under such provisions as were involved in the Whitaker case, [Continental Fire Ins. Co. v. Whitaker & Dillard, 112 Tenn. 151, 79 S. W. 119, 64 L. R. A. 451, 105 Am. St. Rep. 916],

may be excused, we have found no authority holding that a suit can be maintained where no proofs of disability or loss were furnished unless same was waived by the insurer.''

In Jones v. Equitable Life Assurance Society of U. S., supra, opinion by Chief Justice Green, the insured furnished the insurer with a statement of two physicians that he had contracted tuberculosis within the time when benefits would be allowed and premiums would be waived under the terms of the policy. But the court denied insured a recovery because he failed to furnish the company with proof that he was totally and permanently disabled. The court dealt specifically with the provision that if total disability continued for three months there would be a presumption that the disability was permanent, and held that the insured must submit proof to the insurer that he had been totally disabled for the three full months within the time specified when benefits would be paid and premiums waived in order to recover under that provision in the policy.

As a condition precedent to his right to recover in this suit, it was necessary for plaintiff to prove that he had furnished defendant ''due proof'' that he was, (a) totally and permanently disabled prior to November 14, 1936; or that (b) he had been totally and continuously disabled for three or more consecutive months prior to November 14, 1936. His policy had lapsed for nonpayment of premiums on November 14, 1936, unless it had been kept in force under the waiver of premium clause because plaintiff was disabled.

When we refer to the disability of plaintiff, we mean total and permanent disability as defined in section (a) of the policy, or total continuous disability for three or

more consecutive months as defined in section (b) of the policy.

It is difficult, if not impossible, to specifically define what will constitute "due proof" of disability as that term is used in insurance policies. Generally stated, any proof which will fairly show that the insured is disabled and the reasons therefor is sufficient. Full and complete proof is not required. Proof which would make out a prima facie case for the insured would meet the requirements. Certainly, the proof should be sufficient to put the insurance company on notice that the insured was claiming such disability and why. 7 Couch on Insurance, Sections 1540 and 1552; and 1945 Cumulative Supplement, Couch on Insurance, Sections 1540 and 1552.

To meet the requirement of the policy that he must furnish "due proof" of his disability in order to recover benefits and have the premiums waived, plaintiff testified that he wrote W. M. Litchford, manager of the Nashville office of defendant, two letters. The first letter was dated about January 7 or 8, 1936. The second letter was dated about February 5, 1936. Copies of these letters were kept by plaintiff, but they had been lost. The wife of plaintiff saw these letters, read them, knew their contents, and put them into a United States mail box personally. The manager of the Nashville office of defendant stated he had no recollection of the letters, nor any recollection of a conversation with plaintiff concerning the letters. He and his office force testified that the files of defendant, where these letters would have been kept, did not contain the letters nor any reference to them. The officers of defendant, at its home office, who would have charge of these letters, testified that the letters did not appear in their files; and they had no knowledge nor notice of such letters.

Concerning the first letter plaintiff testified:

"Q. When did you write Mr. Litchford the first letter, Squire? A. In January.

"Q. 1936? A. Yes, sir.

"Q. Can you state to the court what you said in that letter, the substance of it? A. Yes, sir.

"Q. What did you say? A. I told him about my series of operations and told him where I had been and where I was operated on and that I was very sick and requested him to send a doctor or somebody that had proper authority out to investigate it."

Mrs. Sadie Omohundro, wife of plaintiff, testified:

"Q. Now, Mrs. Omohundro, what is your best recollection, as near as you can remember, substantially what was stated in these two letters? A. Well, in the first letter, he told Mr. Litchford that he had been to Philadelphia and had these operations, three of them, and at that time the doctor wouldn't let him talk, he couldn't speak, he had to do everything in writing, and he was asking him to notify the Jefferson Standard Life Insurance Company of his condition."

Plaintiff also testified as to the substance of the second letter:

"Q. Now, Mr. Omohundro, just state what is your best recollection, just as near as you can possibly remember, about the contents of this second letter that you wrote, I believe you said, February 5th? A. Yes, sir.

"Q. What did you say in that letter? A. I told Mr. Litchford that I hadn't heard anything from him and that I was very anxious for him to investigate it and I would appreciate just as early an investigation as he could possibly give me; that I was sick and still under the care of a doctor and they was very uneasy about me and I was trying to learn how to talk and I was first

writing at that time. The doctor wouldn't let me say anything.

"Q. In this second letter did you or not refer to this previous communication? A. Yes, sir. I told him about writing the first letter and I hadn't heard anything from him.

"Q. Did you or not refer to the telephone conversation? A. Yes, sir, I referred to the telephone conversation.

"Q. Did you get any reply to that letter? A. No, sir."

Mrs. Omohundro testified:

"Q. Now, what was stated, as best you can recall the substance of what was stated, in the second letter? A. Well, in the second letter he told him that he had come back from the fourth operation—he had already come back in January—and as yet he had never heard from him, and he wanted him to do something about it; he didn't want the policy to lapse.

"Q. Did he make any reference to the first letter having been written to him before? A. Yes, he told him about the last operation and referred to the letter in January; yes.

"Q. You saw that letter, and read it, and mailed it? A. I did."

Plaintiff further testified that he had a telephone conversation with W. M. Litchford between these two letters in which Mr. Litchford said he sent plaintiff's first letter to the home office of defendant.

 Taking the view of the foregoing evidence most favorable to plaintiff and discarding all countervailing evidence, which we must do on defendant's motion for directed verdict (Prudential Insurance Company v. Davis, 18 Tenn. App. 413, 78 S. W. (2d) 358; Wildman Man-

ufacturing Company v. Davenport Hosiery Mills, 147 Tenn. 551, 249 S. W. 984), we hold plaintiff failed to furnish defendant with "due proof" that he was permanently and totally disabled or totally disabled at a time when he would be entitled to recover benefits and have the premiums waived under his policy of insurance. He made no attempt to furnish such proof. He made no claim in these letters of such disability. He stated the operations had been performed upon him, and he was sick, and wanted defendant to send a physician to examine him, and no more. The furnishing of due proof of his disability is an essential fact for plaintiff to establish in order to make out his case against defendant for disability benefits and waiver of premiums. He failed to furnish such proof. Therefore, plaintiff must show defendant waived the requirement of the policy as to furnishing "due proof" of his disability in order to sustain his judgment in this cause.

From the argument in the brief, filed in behalf of plaintiff, we do not understand that plaintiff makes the contention in this court that the insurer waived the requirement that plaintiff must file "due proof" of disability with defendant. Plaintiff does contend that the insurer waived the policy requirement that, "No disability income will be paid or premium waived for any period of disability which preceded *receipt of written notice of such disability at the home office of the company.*" Italics added.)

However, it would be the duty of this court, giving plaintiff the benefit of all reasonable inferences, to consider the question whether defendant waived the requiremnt in the policy that "due proof" of disability must be furnished defendant as a condition precedent to the re-

ceiving of benefits by plaintiff and the waiving of premiums by the defendant.

The proof shows that the Nashville office was established by defendant, and that all expenses of the office were borne by defendant. The employees included a manager, a cashier, and a stenographer. It was the duty of the manager of the Nashville office to appoint agents for the company in Middle Tennessee and supervise their work. All policies written in Middle Tennessee went through this office. The manager was paid a salary for the work which he did as manager of the office and was paid a commission on the business which he personally wrote. He was not a general agent.

All premiums on policies written in Middle Tennessee were paid at the Nashville office. The cashier of that office would give a receipt for such premiums to the insured. The receipt was sent from the home office and was countersigned by the cashier of the Nashville office.

When an insured had a claim against defendant, it was a custom for such insured to notify the soliciting agent who wrote the policy of his claim, or the insured could notify the home office of his claim. If the soliciting agent were notified, such agent, if in Middle Tennessee, would notify the Nashville office of defendant of the claim; and the manager or cashier of the Nashville office would notify the home office of the claim. This notice to the agent who wrote the policy was made personally, by letter, or by telephone.

W. M. Litchford was the agent who solicited and obtained the policy for plaintiff. Plaintiff never did contact any person connected with defendant by a letter, telephone, or personally, except Mr. Litchford. No person in the Nashville office had authority to settle claims for defendant nor to handle claims in any way. All claims were

handled by the home office at Greensboro, North Carolina. When the home office received notice that any insured was making a claim, a blank form for filing a proof of loss was sent to the insured. This form contained two parts, one for the insured to fill out, and one for a physician to fill out. These forms were not kept by the Nashville office. If defendant wanted an examination of the insured, the home office notified the Nashville office, and arrangements for the examination were made by the Nashville office.

Plaintiff testified that he called W. M. Litchford, as manager of the Nashville office of defendant, on the telephone about February 1, 1936. Plaintiff states the substance of this conversation to be:

"Q. Go ahead. What did he say to you. Just tell the jury the whole conversation as you remember it. A. I told him I had made another trip to Philadelphia to my doctor and that he saw necessary to operate on me again and seemed to be very uneasy about me and I was in bad shape and I hadn't heard anything from him since the first letter. He said: 'Well, you will hear in ample time from the company or from me.' I believe he said 'from us.' And then I told him, I says: 'Well, I am expecting somebody out here that has got proper authority to examine me and investigate my condition' and he told me that there would be, and I waited a few days and there wasn't and, of course, naturally thinking about it, I wrote him another letter.

"Q. What, if anything, did he say about what he did with your letter? A. He told me that he sent it to the company, the way I understood it.

"Q. Where to the company, what office of the company? A. The Jefferson Standard Life Insurance Company's office."

After plaintiff's letter to Mr. Litchford dated February 5, 1936, plaintiff never discussed his claim against defendant with any officer or employee of defendant; and he never after that time contacted defendant or its officers or employees or gave any notice that he was making a claim against defendant until he filed his suit on November 13, 1942. Defendant never received any notice of plaintiff's claim at its home office until the suit was filed. Plaintiff never received a reply to his two letters, nor to his telephone conversation; and no cognizance whatever of his claim was taken by defendant. From the time of his last letter until his suit was brought, which was six years, nine months, and eight days, plaintiff admits he received two letters from defendant in regard to his policy. Each of these letters was written from the home office of defendant.

The first letter was dated June 30, 1936. Defendant stated in the letter:

"We take pleasure in informing you that although former premiums under the above policy were not paid when due, *the insurance did not lapse.* . . .

"*Do not allow this policy to lapse*

"The net value in the Policy is sufficient to carry the insurance until November 14, 1936.

"If no payment is made by that date your Policy will then lapse.

"It is certainly to your best interest to keep this Policy in force, and we suggest that you forward remittance without delay."

Plaintiff did not reply to this letter from defendant, nor call to the attention of defendant that he had a claim against it for disability which would automatically waive the premiums on the policy if his claim were sustained.

On June 21, 1940, plaintiff received the second letter from defendant in which defendant stated:

"The Cashier of our Nashville Office has requested me to give you the status of this policy.

"When you failed to pay the premium extension note which became due on April 12, 1933, the cash value was used to continue the policy in force under the terms of the automatic premium loan clause until November 14, 1936. On that date, the policy lapsed without value or benefit.

. . . . .

"If you will answer the questions in part one of the enclosed application for reinstatement, have your signature witnessed, have part two executed by your family physician, and return the form with the enclosed lien note for $1,287.73, signed before a witness, and a check for $693.62, we shall be glad to consider reinstating this policy. If you are unable to apply for reinstatement, we shall be glad to consider an application for new insurance."

Plaintiff did not reply to this letter, nor notify defendant that he had a claim for disability against it.

■ Under the foregoing facts, treated as established and all reasonable inferences favorable to plaintiff drawn therefrom, and all countervailing evidence discarded, can it be said that the insurer waived the requirement of the policy that due proof of loss must be filed by the insured with it? We think not. At most, the manager of the Nashville office had told plaintiff he had sent his letter to the home office of the company, and had told plaintiff in the telephone conversation that he would hear from the manager of the Nashville office, or defendant, in ample time.

The foregoing facts do not show that defendant waived the requirement in the policy that plaintiff must furnish it with "due proof" of his disability in view of the express provisions of the policy which state:

"No agent or other person except the President, a Vice-President, the Secretary or an Assistant Secretary of the Company has power on behalf of the Company to make, modify, or discharge this or any contract of insurance, to extend the time for paying a premium, to waive any lapse or forfeiture or any of the Company's rights or requirements, or to bind the Company by making any promise respecting any benefits hereunder or by accepting any representation or information not contained in the written application for this policy."

We think the conclusion which we have reached is supported by the authorities. Brumit v. Mutual Life Insurance Company 178 Tenn. 48, 156 S. W. (2d) 377; DeFord v. National Life & Accident Insurance Company, 182 Tenn. 255, 185 S. W. (2d) 617; 2 Couch on Insurance, page 1398, section 490, and page 1730, section 548b; and 1945 Cumulative Supplement, Couch on Insurance, page 609, section 548b.

Plaintiff failed to introduce evidence which tended to show that he furnished defendant with "due proof" of his disability, or that the requirement in the policy that such proof must be furnished defendant was waived. Wherefore, there was no evidence to support the verdict of the jury; and defendant's motion for directed verdict should have been sustained.

The judgment of the circuit court is reversed, and plaintiff's suit is dismissed. All costs will follow the judgment in this court.

Felts and Howell, JJ., concur.