Robert RENNER and wife, Cecil Renner,

v.

FIREMEN'S INSURANCE COMPANY OF NEWARK, NEW JERSEY.

Civ. A. No. 967.

United States District Court
E. D. Tennessee, Northeastern Division.

Oct. 6, 1955.

Supplemental Opinion Nov. 29, 1955.

cy. The defense that plaintiffs failed to file proof of loss within sixty days after the fire, as provided in the policy, is no longer relied upon in the suit for the reason it is stipulated that the proof of loss was filed before the institution of the suit. The policy does not contain a forfeiture clause for failure to file proof of loss within sixty days from the date of the fire. Continental Fire Ins. Co. v. Whitaker & Dillard, 112 Tenn. 151, at pages 166–168, 79 S.W. 119, 64 L.R.A. 451. That case is authority for the proposition, which is conceded by counsel for the defendant, that forfeiture of the policy did not take place in this case because of failure to file proof of loss within sixty days from the date of the fire.

Defendant says, further, that plaintiffs are not entitled to recover because they violated the terms of the policy with respect to representations, in that they made misrepresentations as to the loss, as to what they paid for the property, and with respect to the party or parties from whom they purchased it.

Defendant says, further, that the plaintiffs made misrepresentation with respect to where they were located on the night of the fire.

In the course of this trial today, counsel for defendant was asked by the Court whether defendant relied upon misrepresentation allegedly made in the application for the policy, or whether defendant relied upon misrepresentation allegedly made subsequent to the issuance of the policy and subsequent to the destruction of the property covered by the policy. Counsel stated with admirable frankness that the defendant was only relying upon misrepresentation made by plaintiffs subsequent to the fire which caused destruction of the property that was insured. He further stated that the misrepresentations relied upon by him to defeat recovery were, first, that plaintiffs made misrepresentations to the defendant as to the party or parties from whom they purchased the property; second, that they made misrepresentations as to how much they paid for the property.

Fraker & Silvers, Greeneville, Tenn., for plaintiffs.

Cox, Epps, Powell & Weller, Johnson City, Tenn., for defendant.

ROBERT L. TAYLOR, District Judge.

This is an action to recover the sum of $3,000, plus six percent interest, plus statutory penalty, on a fire insurance policy issued by the Firemen's Insurance Company on December 21, 1953, for a period of one year. The property insured by the policy was a house, in the amount of $3,000, and a barn in the amount of $1,000. The house burned April 3, 1954, while the policy was in force.

Plaintiffs claim that they are entitled to recover this amount on the policy, less $487.86 paid to the Federal Home Savings and Loan Association under a mortgage clause, plus interest and penalty. Defendant denies liability. Defendant says that plaintiffs failed to perform all conditions set forth in the policy.

The policy is filed as an exhibit to the complaint. It contains the following provision, beginning at line 1:

"This entire policy shall be void if, whether before or after a loss, the insured has wilfully concealed or misrepresented any material fact or circumstance concerning this insurance or the subject thereof or the interest of the insured therein or in case of any fraud or false swearing by the insured relative thereto."

In Insurance Co. v. Scales, 101 Tenn. 628, at pages 639 and 640, 49 S.W. 743, at page 746, the Court said:

"There must, from the nature of things, be a difference between the cases, even though the policy provide that false swearing, either before or after the loss, shall vitiate the policy. When the false swearing is in the application, it forms the basis upon which the contract rests, and, if fraud enters into it, the policy would be voided, even though the policy [does] not so provide. But, after the loss occurs, then voiding the policy is in the nature of a penalty or forfeiture. In other words, in such cases the holding is virtually that although insured has had a loss, and may be entitled to recover from it, yet, as he has been guilty of fraud in the proofs, he must have his policy vacated and set aside as a punishment for such fraud or attempted fraud. In the latter case, as in all cases of forfeiture, a strict construction should be adopted, and the forfeiture not enforced except on the plainest grounds, if at all."

If a false statement is made in the application, it does not void the policy unless made with intent to defraud or is material to the risk—that is, increases the risk—so that the insurer would not have issued the policy had it known the truth. Code Section 6126.

Whether there was deceitful intent is a question of fact; whether a misrepresentation increases the risk is a question of law. Volunteer State Life Ins. Co. v. Richardson, 146 Tenn. 589, 244 S.W. 44, 26 A.L.R. 1270; Mutual Life Ins. Co. v. Dibrell, 137 Tenn. 528, 194 S.W. 581, L.R.A.1917E, 554; Norvill v. Mutual Benefit Health & Accident Association, 14 Tenn.App. 396, at page 403.

Risk of loss is increased within the meaning of Code Section 6126 if the representation relates to a matter of sufficient importance to naturally and reasonably influence the judgment of the insurer in issuing the policy. Hughes Bros. v. Aetna Ins. Co., 148 Tenn. 293, 255 S.W. 363; National Life & Accident Ins. Co. v. Lewis, 19 Tenn.App. 459, 89 S.W.2d 898; Standard Life Ins. Co. of The South v. Strong, 19 Tenn.App. 404, 89 S.W.2d 367.

It is to be observed from the cases heretofore mentioned that the misrepresentation or fraud must relate to the insurance or its subject matter. Either one of two events may void the policy. First, wilful concealment or misrepresentation of any material fact; second, any fraud or false swearing.

If the concealment or misrepresentation is made in the application for the policy, the following elements must be shown: First, wilfulness; second, materiality; third, relation to the insurance and its subject matter, in this case the dwelling house of the insured.

If the concealment or misrepresentation is made subsequent to the loss, the following elements only are necessary: One, fraud or false swearing. There is no proof that plaintiffs made false swearing or presented a false oath to the defendant subsequent to the fire. Second, the fraud or false swearing must relate to the insurance or its subject matter, which, in this case would be the residence that was destroyed by the fire.

The question of value of the property destroyed is not at issue. The agent who wrote the policy, Mr. Murray, examined the residence and was of the opinion that it had a market value of between $3,000 and $3,500.

The circumstances surrounding purchase of the property by the insured,

Robert Renner, were most unusual. He felt that he had purchased the property from Morgan at a price of $4,250 and the assumption of a $1,650 first mortgage or trust deed held by the Home Federal of Johnson City, and that at the time of this purchase, he delivered an unsigned check in the amount of $4,250 —an act so fantastic that it is hard for the Court to understand, much less believe it. Why would a person give somebody a $4,250 unsigned check as cash payment on a purchase of real estate? Another version is that he found out Morgan had sold the property, that the Home Federal was the owner thereof, and that he purchased the property directly from the Home Federal at a consideration of $1,650, $200 of which was paid in cash and the balance evidenced by a promissory note secured by a trust deed payable over a period of five years.

Home Federal conveyed a fee simple title to the plaintiffs for the consideration last indicated. Thereupon, Robert Renner visited the Greene County Bank, this being the bank on which the $4,250 unsigned check was drawn, and talked with one of the officials and told him, in substance, that a $4,250 check should not be paid, and that if it should be presented it would be a forgery, and the bank must refuse payment.

That is another unusual step for a business man to take in a transaction of this character.

It is unusual in these two respects: First, in the ordinary course of events it is not expected that an unsigned check would be presented to a bank; second, it is not expected that a citizen will forge the name of another citizen to a check for $4,250 and present it to a bank for payment.

Another unusual circumstance about the transaction was that Robert Renner was dealing with Morgan, who, according to his statement, was in a drunken condition when he talked to him. He later visited him, however, when he was not under the influence of liquor.

Morgan and his wife positively denied that Renner visited the Morgan home on more than one occasion about the property.

When Young first contacted Renner about the fire, Renner told Young that he purchased the property from Morgan around December, 1953, and paid him $4,250 and assumed a $1,650 mortgage in favor of the Home Federal. Later, in a written statement to Young, which is filed as an exhibit in the record, and again on May 20, 1954, Renner appears to have told Young the truth about the party from whom he really purchased the property and the amount paid therefor. This is Exhibit No. 8.

For impeachment purposes solely, there is testimony from Kitts and Witt to the effect that Renner told each of these men that he purchased the property from Morgan at a price of $4,250 and the assumption of a $1,650 mortgage. Renner did not mention about any purchase of property from Morgan in his talk to Britton, who handled the sale for the Home Federal.

Another unusual action upon the part of Renner in handling this transaction was that, according to his testimony, he had six or seven thousand dollars in cash, bonds, or other securities, on which he could immediately lay his hands, at the time he purchased the property from Home Federal, yet he only paid $200 cash to that concern and gave a note for $1,450 at six percent interest, payable at the rate of $290 per year. If Renner had all of that money upon which he could lay his hands, it surely was producing for him a tremendous return, or else he felt more secure by having that amount of securities that were quickly convertible, but even in that situation, it is unusual for a person to pay as high as six percent interest on a loan of this amount when he has much more than that in available securities which could be used for payment of the debt.

So, the question for decision is whether Renner by orally stating to Young in his first conversation that he paid $4,200 for this property and bought it from Morgan and assumed a $1,650 mortgage or when later on, namely, May 20, 1954,

he told the same Mr. Young the truth about the source from which he acquired title and the amount he paid for the property.

 Mr. Young, as indicated before, was the representative of the insurance company, and statements to him would be equivalent to statements to the insurance company. It is stated that there was no false swearing by Robert Renner to the insurance company in relation to the insurance or its subject matter.

Counsel for plaintiffs insists that, as a matter of law, concealment and false statements to the defendant insurance company about the question of the source from which the Renners acquired title to the property and the amount paid therefor would not void the policy, because the obligation to pay the amount of the loss by the insurance company had become fixed and that such statements, though admittedly false for the sake of argument only did not in any way injure the fire insurance company or increase its obligation under the policy.

Counsel for the defendant insists that under the express terms of the policy, which were previously read, such misstatements by Renner as to his source of title and the amount paid for the property was a violation of his contract with the insurance company, and that he cannot successfully come into Court and ask for recovery on a contract which he breached.

### Supplemental Opinion

This case was tried to the Court on October 6, 1955, in Greeneville, and at the conclusion of the evidence the Court in an oral opinion from the bench made findings of fact and conclusions of law. These findings were reduced to typewriting by the court reporter and the transcript was filed as a part of the record in the case. The undetermined question is whether the allegedly false statements made by one of the insureds, Robert Renner, to Ray Young, adjuster for the insurance company, on April 6, 1954 that the insured had purchased the property that was destroyed by the fire from Morgan for $4,200 and the assumption of a $1,650 mortgage in favor of the Home Federal Savings and Loan Association of Johnson City, voided the contract of insurance. These erroneous statements made by Renner to Young on the indicated date were corrected in his written statement to Young on May 20, 1954, at which time Renner correctly stated that he purchased the property from Home Federal Savings and Loan Association of Johnson City for the sum of $1,650.

The obligation of the defendant was fixed both at the time Renner made his oral statement to Young, which was the first one, and at the time he made his written, or second statement. It is to be noted that the statements are conflicting and that they relate to the source of title to the property that was destroyed by the fire and the purchase price that was paid for it by the insurer. Neither the questions nor the answers were relevant to the obligation of the insurer under the policy. The fact that the erroneous answers to the questions in the first instance could not change the obligation of the insurer and that the answers were corrected at a later date negatives the contention that the answers were wilful misrepresentations.

 The Court concludes that the proof is insufficient to show actual fraud, concealment or misrepresentation upon the part of the insured, or wilful misrepresentation concerning the insurance or the property covered by the insurance. See 29 Am.Jur. "Insurance," sec. 1132; 45 C.J.S., Insurance, § 982(1), p. 1186; Edwards v. United States, 6 Cir., 140 F. 2d 526, 530, 531.

 Counsel for defendant state in their brief that the insureds filed proof of loss showing that the actual value of the property that was destroyed was $5,-000. The proof of loss was sworn to. It is assumed that counsel contends that the $5,000 placed on the property in the proof of loss was a misrepresentation relating to the subject matter of the insurance and voided the policy. It is to be recalled that the policy was what is

known as a valued policy under the Tennessee law. Since it was a valued policy the question of the value of the property that was destroyed was not material to the obligation of the insurer under the policy. The pre-trial order shows that there is no issue on any alleged misrepresentation as to value. The record will further show that there was no issue on this question during the trial. Robert Renner testified that he valued the property at $5,000 at the time of the loss. He obtained an estimate from the Doak Lumber Company for the cost of like materials that were destroyed and this amounted to $2,986.59, exclusive of labor costs. A like estimate was obtained from the Greeneville Lumber Company which shows a cost of like materials, exclusive of labor costs, of $2,733.16.

 Witness Murray, local agent of the insurer, testified that he inspected the property before issuing the policy and placed a value on it of between $3,000 to $3,500, and so advised the defendant. The record fails to show that the insured made any misrepresentation with respect to the value of the property.

Counsel for defendant have cited numerous cases decided by both Federal and state courts from various jurisdictions, all of which are distinguishable on the facts from the instant case. Counsel has relied heavily on the case of Pennsylvania, etc., Ins. Co. v. Horner, Tenn., 281 S.W.2d 44. It was held in that case that failure of the insured to notify and cooperate with the insurer in violation of the terms of an automobile liability policy precluded the insured from recovering under the policy although the policy contained no forfeiture provision. As pointed out by the Court, the policy provision was valid and was a condition precedent, failure to perform which constituted a good defense. That case is not authority for forfeiture of the policy in the present case. The Court in that case held that the insured failed to comply with a condition precedent which was necessary for the insurance to become effective.

In the instant case, the insurer is relying upon a breach of conditions subsequent as grounds for forfeiture.

 The Court finds that the proof is insufficient to show that there was a breach of a condition subsequent by the insured.

It results that plaintiffs are entitled to a judgment for the face amount of the insurance policy plus interest from September 21, 1954, the date when proof of loss was furnished to the insurer.

Let an order be presented in conformity with the views in the original memorandum and this supplemental memorandum.