Laird & Keehner, Appellees, v. W. J. McCord, Appellant.

**PRINCIPAL AND AGENT:** The Relation—When Agent's Knowledge Not Principal's Knowledge. The knowledge of an agent will not

be imputed to the principal when it is manifest that the agent, *by reason of his adverse interest*, would not communicate his knowledge to his principal.

*Appeal from Harrison District Court.*—EARL PETERS, Judge.

APRIL 3, 1923.

REHEARING DENIED NOVEMBER 20, 1923.

ACTION to recover a real estate commission. Verdict and judgment for plaintiffs. The defendant appeals.—*Reversed.*

*Conner & Powers,* for appellant.

*H. L. Robertson* and *P. W. Harding,* for appellees.

STEVENS, J.—I. This is an appeal from a judgment ·in favor of appellee, a copartnership composed of A. G. Laird and Victor Keehner, real estate brokers, in the sum of $4,084.70, as a commission for the alleged sale of a farm. Although it is alleged in the petition that the purchaser, O. S. Carlson, was produced by appellee, the sale was consummated by the participation of O. A. Malone, another real estate agent, but upon the terms agreed upon with appellee, except at a slightly lower rate of interest on certain incumbrances. The petition contains the usual and necessary allegations, and alleged that appellant orally agreed to pay to appellee two thirds of the purchase price received for '148 acres of the farm above $235 per acre, and two thirds of the purchase price received for an additional 80-acre tract, which he purchased to make the sale to Carlson, above $250 per acre, the price paid therefor. The admitted sale price of the farm was $260 per acre. Appellee further charged in its petition that appellant, for the express purpose of avoiding payment of the commission earned by it, and for the purpose of cheating and defrauding it out of same, fraudulently procured the farm to be purchased in the name of one Gus Fredericksen, for the use and benefit of said Carlson. The answer of appellant to the petition was a general and special denial of the allegations thereof. The reason assigned by appel-

lant for his refusal to consummate the sale to Carlson when he was produced as a purchaser by appellee was that Carlson was unable to pay sufficient of the consideration in cash; that appellant was unwilling to accept a second mortgage of $11,000 offered in part payment thereof. About this time, Carlson solicited Malone to aid him to complete the deal, and thereupon an arrangement was entered into between them to purchase the farm of McCord in the name of Fredericksen. This arrangement, as shown by the testimony of Malone, was as follows:

"I talked to Carlson about this Howe land, or he talked to me, and that was before I talked to McCord. It was before I called McCord to come to Denison. In that conversation, Carlson told me he would like to have the land, or would like to know if I could buy it for him. I—well, to get right at the facts of the matter, I told him that I could not sell that land to him, after he explained to me the condition he was in regard to the farm. He told me he had been trying to buy it and could not buy it, and wanted me to get it for him; and I asked him to detail what had took place, and he explained his position. I said, 'Carlson, I could not get that land for you, because, if I undertook to sell that land to you, it would interfere with the other boys down there about the commission, and he would not sell to you;' and he said he would like to have that place; and I said, 'Well, now, the only way you can get that place would be to get some party to buy it for you, and then buy it off them. I could get it for you that way, but I don't think you could buy it off Jess McCord, because—or he would not sell it to you. He would know he was liable for a commission down there.' "

Carlson entered into an agreement with Fredericksen that the land should be purchased in his name, and the contract, when executed, assigned to him. This arrangement being completed, Malone telephoned appellant, requesting him to come to Denison. Concerning the conversation that took place between Malone and appellant when the latter arrived at Denison, the former testified that:

"I called McCord over the telephone, and asked him to come to Denison: I wanted to see him. He came to Denison. I asked him if he wanted to sell that place known as the Howe and Smith farm, and what he wanted for it, and got him to agree

on terms,—what terms I could sell it on. I told him I had a man I might be able to sell it to, if we could make satisfactory terms. I said something to him in that conversation as to who the purchaser was. Never said anything to him at any time that the purchaser I had in view was Mr. Carlson. * * * The matter of the commission was arranged at the time I called McCord to Denison, after I had talked with Carlson. Well, I asked him about that farm at Dunlap, "and asked him if he wanted to sell it,—if he would sell it, what he would take for it; and he didn't talk very anxious about selling the place; and I said, 'Now, I can get you a buyer for it, but what do you want for it?' And then he began to tell me what he could get for it; so, in the conversation as it wound up, I asked him if he would take $260 an acre for it, and he said, 'Well,' he didn't know about that. Then I made arrangements about the terms. I knowed what terms I had to sell it on, if I could sell it, so I was particular in shaping up the terms that would suit this purchaser; and I explained best I could; and finally then, when we got down to deal, then the commission was arranged, I think, at that time. I told him I wanted $3.00 an acre, if I furnished him a buyer for the land, and he agreed to pay it. That, in substance, is all that was said about the commission.''

Both Carlson and Fredericksen testified that the land was purchased for Carlson; that Fredericksen had no intention of buying it for himself; and that he acted in the transaction for and in the interest of Carlson only. Fredericksen assigned the contract to Carlson a few days after it.was signed by the parties. As stated, the sale of the farm was consummated at the price and substantially upon the terms that had been agreed upon between appellee and Carlson. Appellant accepted the $11,000 mortgage in part payment of the purchase price.

If the record shows that appellant was a party to any deception practiced upon appellee,.or that he acted in bad faith in the transactions with Fredericksen, it must be inferred from circumstances; as no direct evidence was introduced to that effect. He denied any knowledge of the matter, and testified that he believed in good faith that he was selling the farm to Fredericksen, and that he did not know that it was being purchased for Carlson. This, of course, was a question of fact for

the jury. In this situation of the record, the court gave the following instruction:

"7. Where one person acts for another, with his knowledge and consent, in negotiations leading up to a contract for the sale of property, the person so acting for the other will be deemed his agent for that purpose, and any knowledge such agent acquires in conducting such negotiations will operate as a notice to the principal, and the principal will be bound by the knowledge of such agent. In this case, if you find that the witness O. A. Malone was acting for the defendant, with the defendant's knowledge and consent, in the negotiations at the time the contract between the defendant and said Fredericksen was entered into, then said Malone would be the defendant's agent for that purpose, and any knowledge that said Malone acquired, prior to the time the defendant signed said contract, of any talk or arrangements between said Carlson and said Fredericksen as to why said contract for the sale of said real estate was made in the name of said Fredericksen, instead of in the name of said Carlson, would operate as a notice to the defendant; and the defendant will be bound by such knowledge, the same as though he personally knew of such talk or arrangements."

The issue of fraud was submitted to the jury by the court.

The general rule that knowledge of the agent is imputed to the principal is correctly stated by the court; but the instruction overlooks the well recognized exception that, where the circumstances are such as to render it certain that the agent would not communicate his knowledge to his principal, no such presumption will arise. The facts of this case, upon appellant's theory, bring it within the above exception. It cannot be presumed that Malone, who had a contract with appellant for a commission of $3.00 per acre for securing a purchaser and consummating a sale of the farm, would have informed appellant of the subterfuge agreed upon with Carlson, to pretend that the farm was being sold to Fredericksen. The very reasons given by Malone to Carlson for this arrangement would quite conclusively negative any such presumption. This exception to the general rule has been repeatedly recognized by this court. *Millenkamp v. Willenburg,* 184 Iowa 809; *Caffee v. Berkley,* 141 Iowa 344;

*Watt v. German Sav. Bank,* 183 Iowa 346; *Hummel v. Bank of Monroe,* 75 Iowa 689.

It is true that no instruction directly on this point was requested by appellant, but the error inheres in the instruction given.

II. Many other alleged erroneous rulings of the court are assigned by appellant. None of these are likely to arise upon a retrial of the case, and we refrain from giving them detailed consideration.

For the error pointed out in the quoted instruction, the judgment of the court below must be and is—*Reversed.*

PRESTON, C. J., EVANS and FAVILLE, JJ., concur.