W. E. CORNETT, Appellee, v. FARMERS MUTUAL FIRE INSURANCE ASSOCIATION OF WEBSTER AND ADJOINING COUNTIES, FORT DODGE, Appellant.

No. 39413.

451

APRIL 2, 1929.

REHEARING DENIED JUNE 24, 1929.

*Frank Maher,* for appellant.

*Burnstedt & Hemingway,* for appellee.

DE GRAFF, J.—I.  The appellant issued its policy of fire insurance to the appellee in the amount of $600, covering the household goods described therein for a period of five years from the date of such policy, to wit, March 6, 1922.  Among the provisions in the policy appeared the following:

"Additional fire insurance without written consent from the secretary makes this insurance void."

On or about June 3, 1926, the appellee made application for fire insurance to the Iowa State Insurance Company (Mutual), of Keokuk, Iowa, in an amount of $600, to cover the same household goods as described in the policy issued by the appellant in this case.  A policy was issued by the Iowa State Insurance Company (Mutual) to the appellee on such application and delivered to him, and the premium thereon was duly paid.  On the 24th day of February, 1927, the property described in the policies was destroyed by fire.  Claim for indemnity was made by the appellee to both the Iowa State Insurance Company (Mutual) and the appellant company.

It would appear that, at the time of the fire, on or about

midnight of February 24, 1927, there were two policies of fire insurance covering the household goods described in the policies and belonging to the appellee. The policy issued to the appellee by the Iowa State Insurance Company (Mutual) contained the following provision:

"IV. Unless otherwise provided by agreement of this company this policy shall be void:

"(a)   If the insured now has or shall hereafter procure any other contract of insurance valid or invalid on the property covered in whole or in part by this policy."

As the case hinges upon the two provisions of the policies herein set forth, it is necessary to consider the exact meaning of both of such provisions. In the Farmers Mutual policy it is provided that additional insurance without written consent from the secretary makes this insurance void. There is no question that the word "additional" was intended to apply to insurance taken subsequently to that granted by the contract, and not to any insurance which the insured had prior to or on the date of that policy. As it appears from the record that there was no such prior insurance covering the household goods described then, perforce the provision must have applied solely to any insurance added subsequently. The Iowa State Insurance Company's policy provided that, if there be any prior insurance, or if any subsequent insurance be procured on the property described and covered in whole or in part by the policy, the policy shall be void. It therefore appears that this last provision was intended to apply to any prior as well as to any subsequent insurance. It has been held, as a general rule, that such provisions are reasonable, and that, if they are not waived in any manner, violation will cause a forfeiture of the contract. It has also been held that the insured has knowledge of all of the provisions of his contracts, and must observe them strictly, to avoid a forfeiture. These two rules are so elementary that we need not cite authorities.

II.   The appellee does not claim that he secured the written consent of the secretary of the Farmers Mutual to take additional insurance in the Iowa State, nor that the company had any knowledge that he had taken additional insurance on the goods described, until after the destruction of such goods by fire. There were several ways in which the appellee could have terminated

the insurance with the Farmers Mutual at his will and within his rights. One of them consisted in his violation of the provisions of the policy. He could, at any time, have terminated the insurance in the Farmers Mutual by taking additional insurance without the written consent of the secretary of that company. The provision in the Iowa State Insurance Company's policy as against prior or subsequent insurance being, for the moment, cast aside, and it being assumed that the Iowa State policy had no such provision, the very act of taking additional insurance on the goods without the written consent of the secretary would have automatically terminated the insurance under the Farmers Mutual policy. Such a termination of the insurance was well within the appellee's rights, and no one could question his right to bring about such a termination.

III. But the appellee secured a policy with a provision therein which, if no other condition intervened, made the policy void if he had insurance at the time or secured insurance subsequently covering the same property. Therefore, the crux of the situation is whether the Iowa State policy was void *ab initio* by reason of the insurance which the appellee had in the Farmers Mutual. If the Farmers Mutual insurance terminated at the instant the Iowa State insurance attached, then there was no insurance secured prior thereto which would conflict with the provision in the Iowa State policy. Again, as the provision was written in the policy for the benefit of the Iowa State, it could have waived either any then existing insurance or, if it desired, any insurance taken subsequently. The whole matter now rests on the validity of the Iowa State Insurance Company's policy.

IV. No question has been raised as to the validity of the Farmers Mutual policy up to the instant when the Iowa State Insurance Company's policy appeared to become effective, viz., June 3, 1926. If the Iowa State policy was invalid *ab initio*, then the appellee had not violated the provision in the Farmers Mutual policy against additional insurance, and the insurance continued in force and effect to the time of the fire. If, on the other hand, the Iowa State policy was valid, then there was a violation by the appellee of the provisions of the Farmers Mutual policy.

V. Cornett, the appellee, testified that he took the "Keokuk" policy from "Mr. Moring" (Morean), and that he told

Morean that he had other insurance on the household goods in the Farmers Mutual. F. D. Hamilton testified that he was the agent of the Iowa State Insurance Company, and that Mr. Morean solicited insurance for him. There was no question raised as to the fact that both the men, Hamilton and Morean, were agents of the Iowa State Insurance Company. Hamilton testified that the application of the appellee was brought to his office by Morean; that such application was in the handwriting of Morean; that he, Hamilton, filled out part of it with a pen, and in answer to the question of other insurance, the word "no" had been written by him. The question referred to by the witness Hamilton is as follows: "3. Other Insurance?" and is answered "No," which the witness testified he wrote. It is recognized that an insurance agent's assistance in helping an applicant make out an application form is of value to both the applicant and the insurance company. It has also been held that, where answers in the application are filled up by the agent taking such application from his own knowledge, the fact that a copy of the application is attached to the policy which is delivered to the insured will not bind him to statements thus made, although he fails to notify the company of their falsity. *Donnelly v. Cedar Rapids Ins. Co.*, 70 Iowa 693; *Bennett v. Council Bluffs Ins. Co.*, 70 Iowa 600. It is a settled rule in this state that an insurance company is chargeable with the knowledge on the part of its soliciting agent. When the appellee told him that he had a policy of insurance in the Farmers Mutual, it was a present condition, and made known to the agent while the application was in the hands of the agent; and if the soliciting agent Morean or the recording agent Hamilton inserted a false answer to the question as to other insurance in the appellee's application, then the company is chargeable with knowledge of such other insurance, and waived the point as to such other insurance in the provision of its policy. *Wilson v. Anchor Fire Ins. Co.*, 143 Iowa 458, 462. The principle is well settled by this court that, when an insurance policy contains a condition which renders it void at its inception, and this is known to the insurer, it will be held to have waived such condition by receiving the premium and issuing its policy. *Gurnett v. Atlas Mut. Ins. Co.*, 124 Iowa 547, and cases cited therein.

W. M. Merritt testified that he was employed by the Iowa

State Insurance Company to adjust Cornett's loss, and that he was authorized to represent the Keokuk company in adjusting the loss. He stated that it was not unusual, in making adjustments, to claim every defense possible, and that, in his many years of adjusting losses, he had made some rather excessive claims. He testified that he claimed that the Iowa State policy was invalid because of the clause appearing under Section 4, to wit: "Unless otherwise provided by agreement of this company this policy shall be void: (a) If the insured has * * * any other contract of insurance valid or invalid on the property covered in whole or in part by this policy,"—and that this was not the only thing that he claimed about the policy. He also said that the appellee's attorney had told him that they had told two deaf men that they had other insurance, and that Cornett claimed he told both of these men that he had other insurance. Merritt also testified that, when he was told that two deaf men had been told of the fact that they (Cornett) had this prior policy, and they (the deaf men) failed to put it in the policy, he thought that the appellee might claim a waiver, and that, under that waiver, he (the company) would be liable. Cornett testified that the Iowa State Insurance Company paid him $400; that it was paid after the tender of the proofs of loss on the household goods; that he did not have dealings direct with the company; but that he knew that the company paid $400 to his attorneys, as they had done all of the negotiating. Merritt testified that it was a compromise settlement, and that he paid his personal check, and it was paid on behalf of the company. If an officer or agent of the insurer, during the course of his employment, acquires any infor- mation affecting the risk, or becomes cognizant of any breach of a condition precedent, or of false or conflicting statements of the insured, his knowledge is imputable to the insurer; and this is true even though he does not in fact communicate his knowledge to the insurer, or gives it erroneous information. *Wilson v. Anchor Fire Ins. Co.*, 143 Iowa 458. The rule is applicable not only where the agent is a general one, but also where he is a soliciting agent. *Fitchner & Co. v. Fidelity Mut. Fire Assn.*, 103 Iowa 276. It is without dispute that the company, through its agents, Morean and Hamilton, at the time the application was made by Cornett, had knowledge that there was a policy of fire

insurance covering the property, and that, by the action of its agent Hamilton in writing the word ''no'' after the question as to other insurance in the application, it waived the provision in the policy as to any prior or existing insurance.

VI. To void a policy on account of additional insurance, the additional insurance must be valid and enforcible. In *Hubbard & Spencer v. Hartford Fire Ins. Co.*, 33 Iowa 325, 330, this court said:

''The general principle of law upon this point may be stated as follows: In order to avoid a policy on account of a subsequent insurance against an express condition therein, it must appear that such subsequent insurance is valid, and that the policy upon which it is made is capable of being enforced. If it cannot be enforced, it is no breach of the prior policy.''

The court said that the doctrine which it recognized in that case was based upon the fact that the subsequent policy was treated and considered as voided by the company issuing it, as soon as it had notice of the prior insurance, and that, in the court's view, this was a most important consideration; for, if the underwriters in the second policy do not treat it as voided, it cannot so be considered by the insured or the company issuing the prior policy. The fact that Merritt, the adjuster of the Iowa State Insurance Company, assumed the attitude that that company's policy was void because of the prior insurance, does not, of itself, imply that the Iowa State treated the policy as invalid, and not enforcible. It is clearly shown by the record that the Iowa State Insurance Company had knowledge of the prior insurance in the Farmers Mutual, and it accepted the application in which its own agent had written the word ''no'' in reply to the question of other insurance, and it issued a policy to Cornett and accepted the premium on it. Merritt knew of these matters, as he testified that he was told about it, and then, seeking the best way out for the company, he made a settlement by paying $400. The record does not show the amount of the claim made by Cornett against the Iowa State. It may have been for $600 or $400. He testified that he thought it was better to settle these cases than to litigate them. If the Iowa State had stood on a claim that the policy was invalid (and that is what was meant by the expression ''was treated and considered as voided by the company''), and

had refused to make any adjustment of the loss, whether it be termed a ''compromise'' or otherwise, then and in that event, there would have been no question raised about it. Since it took the course it did, however, no other view may be taken but that the company did believe the policy was enforcible under the waiver of the prior insurance through the knowledge imputed to it.

It is our opinion that the lower court in Instruction No. 5 did not state the law in such a way as to avoid confusion in the jurors' minds. Here it is said that:

''If the company issuing the subsequent policy of insurance treats such policy as void after the notice of the existence of first policy, such second policy is invalid, and does not constitute subsequent insurance; because, under such conditions, it is unenforcible; and, further, that, if the company issuing the subsequent insurance does not, after discovering that prior insurance is in existence, by act or conduct treat its policy as void, but treats it as enforcible against itself, then and in that case, it is subsequent insurance, and would constitute a breach of the prior policy.''

It is our opinion that the use of the word ''treat'' was taken by the jurors as meaning the attitude of the company, as exemplified by the position taken by Merritt, the company adjuster, and Hamilton, the agent. The attitude of these men could easily be assumed as ''treating the policy as void,'' but their attitude was not the decisive point in this case.

It would be a very easy matter for any insurance company to assume such an attitude as to make it appear to the unwary and unskilled in law that they were treating a policy as being void, and in that way attempt to bring the condition within the ruling in the *Hubbard* case, as cited above; but there must be some sound reason which causes the treatment as contemplated by that decision, and not a mere subterfuge by which an attempt is made to adjust a loss at the lowest possible price.

We believe that Instruction No. 8 also confused the jury, by saying that:

''If the said Keokuk Company, after discovering the fact that the plaintiff held a prior policy issued by the defendant com-

pany, claimed that the conditions of the policy issued by it to the plaintiff had been violated, and that the policy issued by it to the plaintiff was invalid and unenforcible against it, and did not, after such discovery, treat said policy as a valid obligation on their part to pay plaintiff's loss, in that case there would be no subsequent insurance under said policy.''

The jury might find from the evidence that the company, through Merritt and Hamilton, did make such claims; but, under the record, we hold that such claims came too late. The mere claiming and the mere attitude assumed by these representatives of the company did not constitute a straight out-and-out disclaimer of liability upon which they stood. But under this instruction, the jury might have, and probably did, confuse the assumed claims and attitude as being bona-fide, and thereupon rendered a verdict for the plaintiff, Cornett.

It is our opinion that there is sufficient error in these two instructions to reverse the lower court, and moreover, that, from the record itself, the lower court should have found that, from the evidence before it, which was uncontradicted, there had been a waiver of the prior insurance on the part of the Keokuk Company, and that its policy was valid and enforcible; and for that reason, the trial court should have sustained the appellant's motion for a directed verdict.

The judgment entered is—*Reversed*.

ALBERT, C. J., and STEVENS, MORLING, and WAGNER, JJ., concur.