No. 15,659.

PIONEER MUTUAL COMPENSATION COMPANY *v.* SMITH.

(186 P. [2d] 225)

Decided November 3, 1947.

MR. GEORGE F. MARSH, for plaintiff in error.

MR. RICHARD H. SIMON, MR. ROBERT B. LEE, for defendant in error.

In Department, before: MR. JUSTICE HILLIARD, MR. JUSTICE JACKSON and MR. JUSTICE LUXFORD.

PER CURIAM.

PLAINTIFF in error, to whom we herein refer as the company, was defendant in the trial court. Defendant in error, as plaintiff, there recovered a judgment against the company on a policy of "$50.00 deductible" collision insurance.

Defendant alleges that the court erred in not entering judgment for defendant because the title to the automobile had been transferred without the insurer's consent, and therefore it was not liable in the case.

On April 29th, 1943, one Fay E. Walker purchased an automobile from a concern called Monte's Used Cars, giving an installment note for $540.00, and a chattel mortgage on the car to secure its payment. The amount of the note included, among other things, $14.25 as premium for the collision insurance. The note is in evidence as plaintiff's exhibit G-2. A copy of the Walker mortgage is exhibit G-4. The original of the Walker mortgage is, probably, in the files of the recorder's office.

On the same day the car dealer transferred the note and mortgage to another concern called the Aetna Loan Company, which was not a corporation, but one Goldberg—or Goldberg and an undisclosed partner—who paid the used-car dealer for the note an amount that was agreeable to the parties, and caused the insurance policy to be issued by the company to Fay E. Walker, payable to the "Aetna Loan Company &/or assigns," as its interest may appear. The policy was ordered by, and delivered to, the Loan Company. Walker never saw it. Goldberg didn't write it.

About a month later, after Walker had made a single payment on his installment note, he sold his interest in the car to Franklin Delano Smith who, with Walker, went to Goldberg to obtain his consent to the transfer of title, and there, for all, or some part of the consideration, gave his note, secured by mortgage on the car for the amount of the unpaid balance. Walker's note and mort-

gage no longer represented a liability of Walker, so Mr. Goldberg testified. Smith's liability was represented by his personal note and mortgage.

Goldberg testified repeatedly that he was paid nothing for his services in making the transfer, saying: "We handled it just as if we made a brand new deal. But for our own records, because we did not make any charge, and we did not want to *mess up our records*, we left our original Kardex card in file, *and we just simply told them that when they would come in to make the payment that we would make the payment showing Fay E. Walker by Franklin D. Smith.*" Goldberg retained the note signed by Walker, even though it was satisfied. He did not file or record the mortgage given by Smith. The Walker note bears the endorsement of every payment Smith made. So, what Goldberg said is corroborated by what he did. It is clear that he was playing a game of self-deception, pretending that the Walker note and mortgage constituted the evidence of the principal obligation, and the Smith papers, unrecorded, were simply a sort of a collateral security. Why did he do this? Clearly what he conceived to be to his own interest, to save the recording of the new mortgage, to avoid the "messing" up of his records, as he expressed it, furnished his motive for playing this game of make-believe, and treating the Walker note as the principal debt. And whether he was an agent or not, why should he undeceive the insurance company while taking such pains to deceive himself? To save himself a little labor and a little expense. In short, he was acting in what he believed was his own interest, adversely to the interest of the company.

■■ If Mr. Goldberg was an agent of the company, that fact was established by his own declarations alone. The trial court found that he was such agent. But as the matter stands it is quite unimportant whether he was or not. If he was not such agent, the company was not bound by any knowledge he possessed. If he was

the agent, and if he possessed an interest in the insured property, and also in the policy, and his interest, and the facts and circumstances surrounding the matter were such as to give rise to a clear presumption that in serving his own interest he would not disclose what he knew to the company, then, again, the company would not be bound by what he may have known about the matter and failed to disclose. 29 Am. Jur., p. 618, §813; 2 Am. Jur., p. 298, §379.

If, as Goldberg testified, he was going to "make the payments showing Fay E. Walker by Franklin D. Smith," building records around the extinguished Walker note and mortgage as the principal obligation, then, to be consistent, he would leave the insurance payable in harmony with the fictitious contrivance he had erected in his own interest, as he supposed. He testified that he made no charge, and that had he made a charge of $5.00, "it would have been handled differently in the office routine." He further testified that the insurance company was not notified, "And, as a matter of fact, if, let us say, Franklin D. Smith would have never paid us we would have never collected from Fay E. Walker, because as far as we were concerned Fay E. Walker was definitely out of the picture and had no obligation; he gave up his equities or sold them to Franklin D. Smith." But still he retained Walker's note and credited Smith's payments thereon.

The car was practically destroyed by a collision on January 6th, 1944. The policy still purported to insure Fay E. Walker and the Goldberg's interest as mortgagee. The company had no knowledge of the transfer of the title to the car, nor had it ever had an opportunity to contract, or to refuse to contract, with the new owner. The knowledge Goldberg possessed was never imputed to the company, because even if he possessed the powers of an agent the legal principle or fiction of imputed notice could not operate for the reason that his interest, or what he conceived to be in his interest, to

deal in fiction and save recording fees and avoid "messing" up his records prevented its operation. The policy provides inter alia: "Assignment of interest under this policy shall not bind the company until its consent is endorsed hereon; * * * "

In *Funk v. Shawnee Fire Ins. Co.*, 82 Kan. 525, 108 Pac. 832, upon which the trial court placed much reliance, the agent, Fast, had no interest either in the property or in the policy.

The judgment is reversed, and the cause remanded with directions to dismiss the complaint.