GLENN STRAHORN, appellee, v. KANSAS CITY FIRE & MARINE INSURANCE COMPANY, appellant.

No. 47571.

(Reported in 42 N.W.2d 903)

992

June 13, 1950.

Rehearing Denied September 25, 1950.

Uhlenhopp & Uhlenhopp, of Hampton, for appellant.

Leming & Hobson, of Hampton, for appellee.

MULRONEY, J.—This is a suit upon an insurance policy issued to Glenn Strahorn and Robert Gibson, doing business as Euclid Motor Company. The policy states the insured's address is 1234 E. Euclid Avenue, Des Moines, Polk County, Iowa. Item 2 of the policy states the "policy period" is from August 12, 1947 to August 12, 1948. Item 3 lists ten different coverages, among them being "B-1 Collision or Upset * * * Actual Cash Value less $——— which deductible amount shall be applicable to each collision or upset." In the original policy B-1 was left blank but C (Fire, lightning and transportation), D-1 (Theft, broad form) and E (Windstorm, earthquake, explosion, hail or water) have after them the typed words "see schedule." Attached to the policy and by its terms made a part of the policy is the "Automobile Dealers' Open Policy" which provides the policy "covers automobiles owned by the insured and held for sale." Also attached to the policy are many schedules and endorsements all dated the same date as the original policy, or August 12, 1947. One of the endorsements states as follows: "Notice is taken and accepted that the policy to which this endorsement is attached is amended to cover $50 deductible collision as well as the fire, theft, and windstorm—all being as per schedule."

Paragraph 3 of the dealers' policy is entitled "Named Locations" and the paragraph states: "The specific locations named in the Schedule of Locations and Limits of Liability hereinafter are all the locations * * * owned, rented or controlled * * * by the insured and used by the insured as places of storage of automobiles at the date of inception of the policy or to be used by the insured as such during the term of such policy." The clause goes on to state that "no liability shall attach hereunder at any location * * * rented or controlled, wholly or in part, by the insured and used by the insured as a place of storage of automobiles, except for a period of forty-eight hours after the commencement of such use, unless such location * * * has been reported to the company and endorsed hereon."

994

Paragraph 4 of this dealers' endorsement·is the "Schedule of Locations and Limits of Liability Thereat." This paragraph is divided into "Named Locations" and "Elsewhere." Under Named Locations there is listed "1234 E. Euclid Ave., Des Moines, Iowa", and the limit of liability at such location is $30,000. Under "Elsewhere" there is listed (1) a $5000 limit of liability for cars for first forty-eight hours at unnamed locations owned, controlled or rented by insured, and used by the insured as a place of storage of automobiles (2) a $5000 limit of liability at any automobile show, fair, or other public exhibition (3) a $5000 limit of liability on automobiles in transit by railroad car or other conveyance (4) a $5000 limit of liability on automobiles being driven over road to point of destination selected by the insured as the place of storage of such automobiles, and (5) a $5000 limit of liability at any other location not owned, rented or controlled, wholly or in part, by the insured and·used by the insured as a place of storage of automobiles.

Paragraph 5 of the dealers' policy provides that on or before the fifteenth day of each month the insured shall render a statement of the value of the cars at risk during the previous month, and the premium for the insurance would be computed on this valuation and according to other schedules attached to the policy showing separate rates to be applied for the monthly reported value at risk for fire, wind, theft, and collision or upset.

There is no dispute in the facts. On May 5, 1948, a Cadillac car owned ·by the Euclid Motor Company upset on the highway near Council Bluffs. At the time, the car was being taken to California for sale. The plaintiff, Glenn Strahorn, was the only witness. The defendant-insurer offered no testimony. The court submitted the case to the jury who returned a verdict for plaintiff for $2400, and defendant appeals.

I. The first argument, which is presented at length and with apparent earnestness, in defendant's brief is that the policy does not cover such a collision or upset loss as is here involved. And this is so, the briefs state, because of paragraphs 3 and 4 of the dealers' policy described above. Defendant argues that at the time, of the loss the car was neither at the named location 1234 E. Euclid Ave. nor at any of the other places designated "Elsewhere" in the policy. There is no merit in the argument.

Paragraphs 3 and 4 of the dealers' policy have nothing to do with this loss. These paragraphs merely provide for total liability limits that attach when the cars are at certain locations. There is no provision here that no liability shall attach when the cars are someplace other than those enumerated, save the provision in paragraph 3 that no liability shall attach at any unreported location rented or controlled by insured and used by the insured for storage after the first forty-eight hours of such use. These paragraphs do not purport to limit coverage, except for loss at unreported storage places. They limit the company's total liability from any one casualty at the named location or the five "Elsewhere" locations. But the other collision endorsement referred to amends the entire policy to cover collision with $50 deductible as per schedule. The schedule shows the rate for "collision or upset" on the monthly reported value at risk. The policy defines the "collision or upset" as: "Loss of or damage to the automobile caused by collision of the automobile with another object or by upset of the automobile." It is the dealers' policy that is amended by the collision endorsement.

This is a simple, clear policy insuring all cars owned by the insured and kept for sale against the peril of collision or upset. There are no ambiguous clauses. To agree with the argument of defendant's counsel one would have to believe the Euclid Motor Company at the time it took out this policy insured its cars against collision or upset *only while they were at rest on its used-car lot.* And for this trivial coverage the company charged about seventy-five per cent of the total premium paid. The argument is without any basis in the insurance contract. The clauses which limit liability while the cars are stored, or on their way to storage at certain named or described places, cannot be twisted into a coverage limitation that limits coverage except in those places.

II. The record shows that at the time the policy was issued the Euclid Motor Company was a partnership composed of Glenn Strahorn and Robert Gibson. In February of 1948, Strahorn, the sole plaintiff here, bought out Gibson and thereafter he operated the Euclid Motor Company as sole owner retaining the name, phone number and all rights to do business as the Euclid Motor Company. Strahorn testified that in the purchase

from Gibson he acquired all of Gibson's interest in the partnership, including any interest he had in the policy in suit. The defendant contends this transaction amounted to an assignment and argues the company is not bound to pay this loss to plaintiff by reason of clause 12 of the original policy which provides: "Assignment of interest under this policy shall not bind the company until its consent is endorsed hereon."

The provision against assignment is not applicable to a transfer between the assured partners. Burleson v. Blankenship, 193 Wash. 547, 550, 76 P.2d 614, 615; German Mutual F. Ins. Co. v. Fox, 4 Neb. Unof. 833, 96 N.W. 652, 63 L. R. A. 334; West v. The Citizens Ins. Co., 27 Ohio St. 1, 22 Am. Rep. 294; 29 Am. Jur., Insurance, section 495; 45 C. J. S., Insurance, section 427.

In Burleson v. Blankenship, supra, the rule is stated as follows:

"It is a generally accepted rule that a stipulation against assignment in an insurance policy is not violated by the assignment by one partner to another of his interest in the policy, without the insurer's consent. 6 Couch, Cyc. of Insurance Law, 5165, §1450p."

A particularly fine discussion of the reasons why the assignment clause does not apply to transfers between insured partners is contained in the early case of West v. The Citizens Ins. Co., supra, decided by the Ohio Supreme Court about 1872. There the court stated at page 12 of 27 Ohio St., page 301 of 22 Am. Rep.:

"To say that H. F. West & Co. [the insured] shall not assign the policy, or any interest therein, without consent, is a reasonable condition; but to say that the partners *inter sese* may not change their respective interests is not within the spirit and reason of the clause. The presumption is, that the company had faith in all the partners; the increase of plaintiffs' interests, as we have seen, would but make them more watchful; the retiring partner no longer had a motive to endanger the insurer; no stranger was introduced; no one but those with whom the contract was made was left in control."

The rule as stated in 29 Am. Jur., Insurance, section 495,

is: "A provision against assignment does not apply to \* \* \* the assignment by a retiring partner to his copartners."

And the same rule is announced in 45 C. J. S., Insurance, section 427, page 50, to wit:

"A sale by one partner to another of his interest in the property, accompanied by a delivery of the policy, operates as a valid assignment without the consent of insurer and transfers to the purchaser all the seller's equitable interest, and such an assignment does not fall within the clause requiring insurer's consent."

In Cowan v. Iowa State Ins. Co., 40 Iowa 551, 553, 554, 20 Am. Rep. 583, 584, 585, this court had under consideration the provision against alienation in a fire insurance policy and its application when the insured transferred the personalty covered by the policy to a partnership of which he was a member. There we said: "Nothing less than a transfer of the property insured, whereby plaintiff would part with all his interest therein, would operate to defeat the policy under the condition against alienation."

And the opinion states the reason for the rule is "that no increase of risk is wrought by the sale or transfer of a part of, or an interest in, the property insured." While the case is not quite in point, the same reason for the transfer between partners being no violation of the assignment clause—that it does not increase the risk—is often given by the courts. Today we have a statute, section 515.101, Code, 1946, providing that failure to observe a stipulation in a policy that does not contribute to the loss, does not prevent recovery thereon.

III. On or about April 1, 1948, the plaintiff sold the real estate located at 1234 East Euclid Avenue and moved his business across the street where he continued to do business as the Euclid Motor Company. When he moved he retained his same telephone number. Upon this change of location defendant bases an ingenious argument. Reference is again made to paragraphs 3 and 4 of the dealers' policy. Now the argument advanced is that the named location, or 1234 East Euclid Avenue, is the "fountainhead of coverage" and "when the named location is gone, then the entire coverage fails." The argument is specious.

The insurance is not on a place. It is on automobiles—all automobiles owned by the insured and kept for sale. It is not on automobiles at any particular place, though there are limits of liability when the cars are stored at certain places, and one limitation of coverage when the loss occurs to automobiles stored at an unreported place that insured rents, or controls. We have previously analyzed paragraphs 3 and 4 of the dealers' endorsement. There is absolutely nothing in these paragraphs upon which to base an argument that the coverage on all insured's cars fails when the named location is sold. If the loss involved were one that occurred at the new location and more than forty-eight hours after the use of the location, the paragraphs might be important on the question of coverage—not because of the sale of 1234 E. Euclid Avenue but because of the storage of cars at an unreported location rented, or controlled by the insured. Coverage for the peril of collision did not depend upon the insured's retaining title and possession to any named storage place. Defendant cannot take clauses which merely limit its total liability at certain storage places and build an argument of no collision coverage when a certain storage place is sold.

IV. What we have said decides the case. The trial court submitted the case to the jury on the theory of waiver of the change of ownership and location. Actually the trial court should have directed the jury to return a verdict for the plaintiff. The undisputed testimony shows a loss within the plain provisions of the coverage of the policy. The defendant introduced no evidence to dispute this testimony. There was no question for the jury presented except possibly the question of the amount of plaintiff's recovery.

The interpretation of the insurance contract was for the court. The facts are all undisputed. They lead inevitably to but one conclusion, namely, that the loss was within the protection insured against. No other legitimate inference can be drawn from the facts. The court should have directed the jury to so find. 46 C. J. S., Insurance, section 1373; Business Men's Acc. Assn. v. Cowden, 131 Ark. 419, 199 S.W. 108; Waycott v. Metropolitan Life Ins. Co., 64 Vt. 221, 24 A. 992, 33 Am. St. Rep. 923; Tewksbury v. Metropolitan Life Ins. Co., 186 S. C. 489, 196 S.E. 183; Harman v. New York Life Ins. Co., 184 S. C. 461, 192 S. E.

878; Prudential Ins. Co. v. Hampton, 252 Ky. 145, 65 S.W.2d 980; Equitable Life Assur. Soc. v. Spencer, 262 Ky. 478, 90 S.W.2d 704.

Defendant received far more than it was entitled to when it secured a submission on the issues of waiver. Consequently, any assignments of error based on admission of testimony concerning waiver, or whether the proof was or was not sufficient to constitute waiver, or the trial court's instructions in submitting the issues of waiver are without merit. Defendant's brief lists one hundred one assignments of error in this simple case where the entire record of testimony is the short examination and cross-examination of the plaintiff as the only witness. Most all of them are answered by saying the plaintiff established a prima facie case of loss due to a peril insured against, and defendant introduced no evidence to refute the prima facie case.

Some of the assignments and the argument thereunder assert the policy was not in force because the premium for cars at risk in May 1948 was not paid at the time of the loss. The policy provided for a "deposit premium" of $75 and the record shows that the practice was to pay the premium on the value of the cars at risk about every four months after the auditors for the insurance agency audited insured's books to determine the total value at risk. But the complete answer to this argument is that this policy was for one year, from August 12, 1947 to August 12, 1948. It was not forfeited by any notice under section 515.80, Code, 1946, which section provides that no insurance contract shall be forfeited or suspended for nonpayment of any premium unless written notice is served on the insured that the premium is due and the policy will be suspended or forfeited if not paid. The policy was in full force and effect at the time of the loss in May 1948.

Since the verdict was within the evidence of the damage sustained by plaintiff, the judgment based thereon is affirmed.— Affirmed.

All JUSTICES concur.