WESTERN MUTUAL INSURANCE COMPANY, appellant, v. CECIL WOOD et al., appellees.

No. 48727.

(Reported in 70 N.W.2d 563)

1144

June 7, 1955.

B. C. Sullivan, of Rockford, and Bannister, Carpenter, Ahlers & Cooney, of Des Moines, for appellant.

Westfall, Laird & Burington, of Mason City, for appellees.

Mulroney, J.—The pertinent facts in this case are not in dispute. One Cecil Wood secured a standard automobile liability policy of insurance in the Western Mutual Insurance Company of Des Moines, covering his Ford automobile. The policy was secured from H. C. Batty, of Rockford, Iowa, who had acted for the company as an agent for about twenty-five years with authority to solicit applications for insurance. Mr. Batty's agency arrangement with Western was the familiar one whereby he would take the proposed insured's application, send it to Western in Des Moines, and when the policy would be sent to him he would countersign it and deliver it to the insured, and bill the insured for the premium; but Mr. Batty was to pay Western the premiums, less commission, on all policies delivered by him every thirty or forty-five days. The policy in this case was for one year, from November 3, 1950, and the premium which was charged by Mr. Batty to Cecil Wood was $27.10, which was paid. It was renewed for a second year and an eighty-nine cent overpayment to Mr. Batty on the first year's premium was credited by Mr. Batty to Cecil Wood on the second year's premium.

The policy contained a so-called Automatic Insurance provision whereby the insurance afforded by the policy on the de-

scribed automobile was to apply during the policy period to a newly acquired automobile subject to certain conditions which, as applicable here, are "if the named insured notifies the company within thirty days following the date of its [the newly acquired automobile] delivery to him, and if * * * it replaces an automobile described in this policy * * *."

On or about January 23, 1952, some finance company repossessed the Ford and in the same month Cecil Wood acquired a Chevrolet, and later in January, Mrs. Cecil Wood, acting for the insured, came to Mr. Batty's office and told him Cecil wanted to have the insurance transferred to his newly acquired Chevrolet. Western furnished all of its agents, Mr. Batty included, with forms (Exhibit 3) for use in transmitting data to the home office when the described automobile is to be eliminated and a newly acquired automobile substituted. In this instance Mr. Batty refused to fill out or send in this form and he told Mrs. Wood of his refusal and he said it was because her husband had not paid the premium, and he told Mrs. Wood to have Cecil come and see him. Cecil did not go to see Mr. Batty and Mr. Batty did not notify the home office of Western of the newly acquired car. In March 1952 Cecil had an accident with the Chevrolet, and Donald and Marie Sebastian secured judgment against Cecil Wood as the outgrowth of this accident.

Western Mutual Insurance Company brought a declaratory-judgment action against the Sebastians and Cecil Wood seeking declaration of no liability on their policy on the ground it was not notified of the newly acquired Chevrolet within thirty days. The trial court held for defendants and the insurance company appeals.

I. We do not find where we have heretofore been called upon to interpret this so-called "automatic insurance" clause, but it seems to be a clause that is found in standard policies and the courts of many other states have rendered opinions involving its application under various fact situations. See note 34 A. L. R.2d 936. In Home Mut. Ins. Co. v. Rose (1945), 150 F.2d 201, 204, Circuit Judge Woodrough of our own 8th Circuit, said:

"The automatic insurance clause in standard policy forms is intended to meet the necessity for maintaining continuous in-

surance on cars in the presence of the recognized custom among insured owners of acquiring other cars by replacements and new purchases during the life of their policies, and is intended to be and is worded so as to afford proper insurance protection to such insured and at the same time to preserve the essentials of insurance for the insurer."

The clause is usually called "automatic insurance" in the clause heading in the policy, but in any event courts generally hold it provides automatic coverage within the notice period, (usually ten or thirty days) before any notice has been given. Merchants Mutual Casualty Co. v. Lambert, 90 N. H. 507, 11 A.2d 361, 127 A. L. R. 483 and note, page 486.

In Continental Casualty Co. v. Trenner, D. C. Pa., 35 F. Supp. 643, 644, it is said: "* * * insurance which can be extended by a mere notice from the insured and without any new contract can be fairly called 'automatic' insurance * * *."

Here the narrow question is as to the notice that was given during the thirty-day period. No particular form of notice is prescribed. The language of the policy is that the automatic coverage applies "if the named insured notifies the company" of the replacement. To notify the company simply means to make it known to the company. See Volume 28, Words and Phrases, Perm. Ed., pages 857, 858. Plaintiff does not argue Mr. Batty would not be its proper agent for an insured to notify of the replacement. Indeed it could hardly do so in view of the fact it furnished him with forms such as Exhibit 3, and the vice-president of Western testified the general operation of the company was for the agents, such as Mr. Batty, to get the information as to a policy covering replacement, and forward it to the company. He did say many agents did not use the form Exhibit 3; "just write it in the form of a letter, the same effect."

It is not questioned that the Chevrolet was a replacement for the Ford and it is not argued the policy was not in force. It had not been canceled for nonpayment of premium. Section 515.80, Code, 1954; Strahorn v. Kansas City Fire & Marine Ins. Co., 241 Iowa 991, 42 N.W.2d 903. It was canceled sometime after the accident. Thus we have a case where it is admitted the insured did notify the agent of the company of the replacement, the said agent being the one charged with the duty, as the vice-presi-

dent said, "to get that information on the policies they have written and forward it to the company." But the insurer argues it is not bound by the notice because Mr. Batty said to Mrs. Wood that he would not transmit the knowledge of the replacement she had given him to the company, and in fact did not communicate the fact of the replacement, of the Chevrolet for the Ford, to the home office.

There is no merit in the insurer's argument. The notice was for the benefit of the insurer. Maryland Casualty Co. v. Toney, 178 Va. 196, 16 S.E.2d 340. The insured had a simple duty to impart knowledge. His duty to the insurer was fulfilled when he imparted that knowledge to the agent, who, under the undisputed record, was designated by the company to receive it. As the trial court held "notice to H. C. Batty was notice to the company." Mr. Batty had no power to terminate the operation of a single clause of this policy for nonpayment of premiums to him without proceeding under section 515.80, Code, 1954, and giving the required thirty-day notice. The company cannot deny coverage because of the failure of its agent to communicate the knowledge he received from the insured. It would be a dangerous doctrine indeed to hold mere failure of the agent to communicate the knowledge he received would void the insurance. As the trial court observed, to so hold would mean the company could escape liability "if Mrs. Wood had given the information to the Vice-president, Albert H. Adams, and he in turn had said the company refused to accept the information until the policy was paid for."

Plaintiff's whole argument is built upon a premise of agency. It starts with a proposition that defendants' case must rest entirely upon that doctrine of the law of agency called the "general presumption" that an agent, in the performance of his duty, will convey knowledge he receives to his principal. It goes on to point out the limitation to the rule to the effect that this general presumption, that an agent will pass on his information to his principal, will not apply when the circumstances plainly indicate the agent will not advise his principal. As applied to this case plaintiff contends the evidence plainly shows agent Batty would not impart the replacement knowledge he received to the home office, therefore the company was not notified.

The general principle of agency which plaintiff uses is sound

1148

but not applicable here. The fallacy in plaintiff's argument lies in the first premise. Defendants' case does not rest entirely on a presumption that an agent will convey knowledge to his principal, although as a general rule "An insurance company is bound by knowledge of, or notice to, its agent within the general scope of his authority." 44 C. J. S., Insurance, section 154. See also Cornett v. Farmers Mut. Fire Ins. Assn., 208 Iowa 450, 224 N.W. 524; Terry v. American Ins. Co., 202 Iowa 1291, 211 N.W. 716; Norem v. Iowa Implement Mut. Ins. Assn., 196 Iowa 983, 195 N.W. 725.

Actually the whole question here is one of contract—whether the provision to notify the company, in the contract of insurance, was complied with. Wood possessed a valid, unexpired and uncanceled policy of insurance, covering a described car. It covered any replacement of the described car for a period of thirty days. And it covered any replacement after thirty days "if the named insured notifies the company." The insured was not under a duty to notify the home office of the insurance company, or any department in the home office handling replacements. He was under a duty to impart knowledge to the company. Presumably he could have written a letter to the company giving the information. In a sense everyone who works for an insurance corporation is its agent. Surely the insured has complied with the provision to notify the company when he gives the knowledge to that employee, who, the vice-president said, was under a duty to get the information. The company devised its system of handling transfers of coverage to replacements by the insured notifying certain employees. When that is done the company is notified and no question of agency is involved. That employee is not at liberty to reject the information, and the company is not absolved because he tells the insured he will not pass on the information to other employees in the home office. The insured has carried out his contract duty of notifying the company, when he tells the employee, whose duty it is to receive the information. The company cannot avoid the contract by saying it was not notified because that employee said he would not tell the home office. This is automatic insurance "if the named insured notifies the company" of the replacement. No new policy

is issued by the home office. Coverage fastens for the replacement under the very terms of the old policy when the company is notified of the replacement. The notice is complete when the information is given to the employee designated by the company to receive it. After that the insurer will not be allowed to say it was not notified because that employee said he would not pass it on to the home office. The judgment of the trial court is affirmed.
—Affirmed.

WENNERSTRUM, C. J., and BLISS, OLIVER, SMITH, and HAYS, JJ., concur.

GARFIELD, THOMPSON and LARSON, JJ., dissent.

GARFIELD, J. (dissenting)—I think the majority opinion is unsound. Not a single authority is cited that supports it.

As the majority observes, the facts are not in dispute. No witness testified for defendants. The policy covered defendant Wood's 1941 Super De Luxe Ford sedan but provided it would cover a newly acquired automobile "if the named insured notifies the company within thirty days following the date of its delivery to him, and if * * * it replaces an automobile described in this policy * * *" (i.e., the Ford).

January 23, 1952, a finance company repossessed the Ford and Wood acquired a 1937 Chevrolet with which, on March 20, 1952, he collided with another car when he was drunk. As a result of this collision judgment was rendered against Wood for $14,427.16, including $2000 exemplary damages. (Sebastian v. Wood, 246 Iowa 94, 66 N.W.2d 841.)

The controversy here is whether the policy covered the Chevrolet on March 20, 1952, and it turns upon whether plaintiff-company was properly notified of its acquisition. We are not concerned with whether the insurance was in effect on the Chevrolet during the thirty-day period following its delivery to Wood on January 23. The majority's expression on that question is obviously mere dictum. See Mitcham v. Travelers Indemnity Co., 4 Cir., N. Car., 127 F.2d 27, 29. In Merchants Mut. Cas. Co. v. Lambert, 90 N. H. 507, 11 A.2d 361, 127 A. L. R. 483, cited by the majority, the accident occurred the day the newly acquired automobile was delivered and the dispute was whether the insurance

covered it on that day. I repeat, no such question is presented here.

It was stipulated the only notice to the company, prior to the collision, of Wood's acquisition of the Chevrolet is the notice to the agent Batty, if it constituted notice to the company. Batty was a banker, in the small town of Rockford, who as a sideline solicited insurance for five automobile insurance companies including plaintiff. He was required by section 515.52, Codes, 1950, 1954, to countersign policies solicited by him. The only evidence of any notice of Wood's acquisition of the Chevrolet is that of Batty concerning Mrs. Wood's talk with him late in January.

Because it pertains to the vital point in the case Batty's testimony as to this talk is here quoted: "* * * his wife came in the latter part of January, 1952, and asked that the policy be changed to a different car, *asked that I write the company to that effect; I told her no, this policy was not paid and I would do nothing further in regard to it; I told her I would not write the company;* I told her to have Cecil come in and she said she would; Cecil did not come in." On cross-examination Batty said "I emphatically told her I wouldn't do it."

Later, after the collision in March, Mrs. Wood informed Batty she had told Cecil to go see Batty. It is shown without dispute that Batty, true to his word, did not advise the company Wood had acquired another car and it had no knowledge or notice of such fact until after the collision.

The position the agent Batty took in his talk with Mrs. Wood is entirely understandable in view of Wood's persistent failure to pay any of the premium of $59.40 for the year in question except for a credit of 89 cents from an overpayment on the first (previous) year's premium. Further explanation for Batty's attitude is found in undisputed evidence that Wood procured the renewal policy in the first instance by his false representation that the premium would be paid by the dealer from which he purchased the Ford. These circumstances may well account for the fact Wood sent his wife to notify Batty he desired his insurance changed to cover the Chevrolet while he (Wood) kept in the background and did not go to see Batty as the latter requested.

Undoubtedly it was necessary for Wood to notify the insurance company prior to the collision he had acquired the Chevrolet

in order for the insurance to cover it, at least after the thirty-day period following its delivery. The annotation in 34 A. L. R.2d 936, 943, referred to by the majority, says: "It is well established that where the 'automatic insurance' clause requires notice of the acquisition of a new automobile to be given the insurer within a specified time after delivery, the period generally being either ten or thirty days, a failure to give notice prior to an accident occurring after the expiration of the designated period precludes coverage of the new automobile."

As to the importance of notice to the company of the insured's acquisition of another car Mitcham v. Travelers Indemnity Co., supra, 4 Cir., N. Car., 127 F.2d 27, 29, states: "The requirement of notice was of obvious importance to the company. Amongst other purposes it served to inform the company of the identity and character of the vehicle to be covered by its policy and to enable the company to exercise the rights reserved to it in the policy and to ascertain whether the insured had complied with his obligations thereunder. It cannot be said that the policy provision was so immaterial to the risk that it could not be invoked for the purpose of avoiding the company's contractual liability."

Undisputed testimony of plaintiff's vice-president is, "A 1937 Chevrolet, an older car, would not be as desirable a risk as a 1941 Ford." This would seem to be an obvious truth.

It is of course the general rule, as the majority states, that an insurance company is bound by notice to or knowledge of its agent within the scope of his authority even though the agent fails to communicate such notice or knowledge to the company. Obviously it is only where there is such failure that the general rule need be invoked. Where the notice or knowledge is communicated to the company no question arises as to whether it is bound by notice to or knowledge of the agent. No one contends, as the majority seems to think and as the learned trial court apparently thought, mere failure of the agent to communicate to the company the knowledge he received from the insured constitutes an avoidance of the policy.

Only by application of the general rule just referred to may it be claimed Wood notified the company he had acquired the

Chevrolet. Plaintiff-company concedes the general rule substantially as stated above. However, it is thoroughly settled the general rule is not of universal application, or, stated differently, there are several limitations upon or qualifications of it. 2 Am. Jur., Agency, section 372, says: "There are many limitations upon, and qualifications of, the general rule which imputes an agent's knowledge to his principal." To substantially the same effect is 3 C. J. S., Agency, section 262.

Perhaps the most widely recognized limitation upon the general rule is that it does not apply where the person dealing with the agent is acquainted with circumstances plainly indicating that the agent will not advise his principal. 3 C. J. S., Agency, section 262, pages 196, 197, and cases cited notes 76 and 77, and 1955 Pocket Part. Several of the decisions cited involve insurance agents. To the same effect are 16 Appleman Insurance Law and Practice (1944 Ed.), section 9102, page 640; 2 Couch Cyc. Insurance Law (1929 Ed.), section 525, page 1550. See also Id., section 525d, page 1576. It is this qualification of the general rule on which the company relies.

We have recognized virtually the same qualification of the general rule relied on by the company here (although stated somewhat more broadly) in Hummel v. Bank of Monroe, 75 Iowa 689, 37 N.W. 954; Watt v. German Savings Bank (Ladd, J.), 183 Iowa 346, 364, 165 N.W. 897; Laird & Keehner v. McCord, 196 Iowa 972, 976, 195 N.W. 517, and other decisions.

The majority says the principle of agency the insurance company urges is sound but not applicable here. Are we to understand the principles of agency are not applicable to insurance companies? I think it is the majority's decision, not plaintiff's argument, that is based on a fallacy.

From 44 C. J. S., Insurance, section 154, the majority quotes: "An insurance company is bound by knowledge of, or notice to, its agent within the general scope of his authority." The principle—or perhaps more accurately, the qualification of or limitation upon the general rule—the company invokes that seems applicable here *is stated in the same section of C. J. S., one sentence removed from the one the majority quotes.* It reads, "Likewise, the agent's knowledge or notice will not be imputed to

insurer where the circumstances are such as to put the person dealing with the agent on notice that the agent will not advise his principal."

One of the decisions cited in support of the text just quoted is Mutual Life Ins. Co. of N. Y. v. Hilton-Green, 241 U. S. 613, 622, 623, 36 S.Ct. 676, 680, 60 L. Ed. 1202, 1211, a leading case also cited by plaintiff here. It states: "The general rule which imputes an agent's knowledge to the principal is well established. The underlying reason for it is that an innocent third party may properly presume the agent will perform his duty and report all facts which affect the principal's interest. But this general rule does not apply when the third party knows there is no foundation for the ordinary presumption—when he is acquainted with circumstances plainly indicating that the agent will not advise his principal."

Other precedents to the same effect include Gill v. Mutual Life Ins. Co. of N. Y., 8 Cir., Neb., 63 F.2d 967, 970; Pioneer Mut. Comp. Co. v. Smith, 117 Colo. 275, 186 P.2d 225; Rushville Nat. Bk. v. State Life Ins. Co., Ind. App., 197 N.E. 740, 743; Jacobs v. Metropolitan Life Ins. Co., La. App., 39 So.2d 346, 350–352; Martin v. Provident Life & Acc. Ins. Co., 242 Ky. 667, 47 S.W.2d 524, 526; DeFord v. National Life & Acc. Ins. Co., 182 Tenn. 255, 185 S.W.2d 617, 620; Mutual Benefit Health & Acc. Assn. v. Ratcliffe, 163 Va. 325, 175 S.E. 870, 874.

The three Iowa decisions cited by the majority, found in note 98 to 44 C. J. S., Insurance, section 154, merely follow the general rule that an insurance company is bound by the knowledge of its authorized agent. They do not involve the question presented here and are in no way inconsistent with the authorities the company cited. In fact defendants, the trial court or the majority here have cited no authority which even considers the legal principle relied on by plaintiff.

It is apparent that where, as here, it is undisputed the agent refuses to notify the company of the information given him by the insured *and the agent plainly and emphatically tells the insured* (acting through his wife) *of his refusal,* the circumstances are such the insured knows the agent will not notify his principal.

The only answer defendants, the trial court or the majority here attempt to make to the company's main contention and the authorities supporting it is that Batty was acting within the scope of his authority in receiving notice from Mrs. Wood her husband had acquired the Chevrolet. Of course this is no answer at all. *It is not surprising that not a single authority is cited in support of the majority's holding it is an answer.*

The general rule defendants invoke clearly could not be invoked unless Batty were acting within the scope of his authority in receiving notice of the replacement. But the fact Batty may have been acting within the scope of his authority does not render inapplicable the qualification of the general rule the company relies upon. When Batty told Mrs. Wood (for understandable reasons) he would not notify the company her husband had acquired the Chevrolet the company was not chargeable with the notice to Batty.

The majority's holding that notice to H. C. Batty was notice to the company is necessarily based solely on the general rule of law that the principal is bound by notice to its agent acting within the scope of his authority. The *underlying reason for this rule* (not the rule itself, as the majority asserts) is that the third party may ordinarily presume the agent will transmit the notice to his principal. It is obvious, and the authorities plainly so hold, the reason for the rule fails and the rule is inapplicable where, as here, the third party knows the agent will not transmit the notice. Nevertheless the majority insists on giving the insured the benefit of this general rule but arbitrarily refuses to give the insurer the benefit of a well-settled qualification of the rule which the undisputed facts make applicable.

I would adhere to an established, applicable legal principle and therefore

I would reverse.

THOMPSON and LARSON, JJ., join in this dissent.