634 P.2d 582

**FARMERS INSURANCE COMPANY,
Plaintiff-Appellee,**

v.

**Joseph ERLICHMAN,
Defendant-Appellant.**

**No. 1 CA–CIV 4990.**

Court of Appeals of Arizona,
Division 1,
Department B.

July 21, 1981.

Rehearing Denied Sept. 9, 1981.

Review Denied Oct. 6, 1981.

Jones, Teilborg, Sanders, Haga & Parks by William R. Jones, Jr., Linda A. Drake, Robert J. Bruno, Phoenix, for plaintiff-appellee.

Gust, Rosenfeld, Divelbess & Henderson by Richard A. Segal, Phoenix, for defendant-appellant.

OPINION

JACOBSON, Judge.

This appeal requires the determination of whether oral notification to an insurance company that coverage under an automobile liability insurance policy should be transferred to another vehicle is sufficient

to cancel coverage on the vehicle named in the policy.

This issue arose out of a declaratory judgment action brought by plaintiff-appellee, Farmers Insurance Company (Farmers), against defendant-appellant, Joseph Erlichman, seeking determination of whether an insurance policy issued by Farmers afforded coverage to a 1975 Chrysler Cordoba driven by Erlichman on December 25, 1976, which was involved in an accident with a third party. The case was tried upon stipulated facts to the trial court sitting without a jury. The trial court entered judgment in favor of Farmers, holding that no coverage existed under its policy, and Erlichman has appealed.

As has been indicated, no dispute exists as to the operative facts. On October 28, 1976, Farmers issued a policy of automobile liability insurance to Carla Ryan and her husband Michael Piccarreta, covering a 1975 Chrysler Cordoba. This automobile was owned by a local leasing company and was supplied to Carla Ryan as a fringe benefit of her employment as an attorney with Erlichman's law firm.

In mid-December of 1976, Erlichman retook possession of the 1975 Cordoba and supplied Ms. Ryan with a 1974 Mustang. Pursuant to this arrangement, Erlichman called his own insurance agent and arranged for the Cordoba to be covered by his existing Fireman's Fund policy of insurance. Likewise, prior to December 25, 1976, Michael Piccarreta telephoned Farmers' agent, Roy Wood, and advised Wood that he and his wife no longer had possession of the Cordoba and that the Farmers policy should now cover the 1974 Mustang. As stated in the stipulation of facts: "Both Farmers' agent and Mr. Piccarreta intended that the insurance on the Cordoba be removed effective as of that time." No written notification was given to Farmers of this change.

On December 25, 1976, Erlichman, while driving the Cordoba, was involved in an automobile accident which resulted in personal injuries to a third party. Subsequent-ly, Erlichman was sued because of this accident and Farmers, under a reservation of rights, defended that action. This litigation was settled by Erlichman's insurer, Fireman's Fund, and Farmers under an agreement whereby Farmers contributed $50,000 to that settlement, but in the event it was later determined that no coverage existed under the Farmers' policy, Erlichman would repay Farmers $50,000 without interest.

In contending that the oral agreement between Piccarreta and Farmers was ineffective to remove the Cordoba from the Farmers coverage, Erlichman relies upon a condition of the Farmers policy which provides:

This policy may be canceled by the named insured by mailing to the company written notice . . . .

and A.R.S. § 28–1170.F.1, which provides:

The liability of the insurance carrier with respect to the insurance required by this chapter shall become absolute when injury or damage covered by the motor vehicle liability policy occurs. The policy may not be cancelled or annulled as to such liability by an agreement between the insurance carrier and the insured after the occurrence of the injury or damage, and no statement made by the insured or on his behalf and no violation of the policy shall defeat or void the policy.

Based upon the insurance policy condition and this statute, Erlichman argues that the public policy of this state as embodied in the Safety Responsibility Act is for the protection of the travelling public and therefore "cancellation" of insurance must occur in strict compliance with the policy provisions. Since written notice of removal of the Cordoba from coverage did not occur before the accident involved here, Erlichman's argument continues that public policy requires that at the time of the accident, the Cordoba was included in the Farmers coverage.

■ Insofar as Erlichman's "public policy" argument is concerned, the underlying

public policy of Arizona's Safety Responsibility Act is to protect *innocent* members of the motoring public. A.R.S. § 28–1101 et seq.; *Schecter v. Killingsworth*, 93 Ariz. 273, 380 P.2d 136 (1963). This public policy was completely satisfied when the "innocent" third party sued Erlichman and in that litigation received full satisfaction for his injuries and damages. Erlichman, by reason of the prior litigation, was cast in the role of the "wrongdoer" and thus fell without the pale of the public policy protection envisioned by the Safety Responsibility Act.

Erlichman argues, however, that if in fact the innocent third party were before the court urging coverage, public policy would require that coverage be found to exist and the result should not be different merely because the parties are different. Under the facts here, we are not convinced that "public policy" would require coverage even if the innocent third party were before the court, but in any event we need not decide that issue here. Suffice it to say that in this litigation, Erlichman, not being covered by the mantle of "public policy," stands in the position of a stranger to the contract of insurance between Farmers and Piccarreta. The question then becomes whether the contracting parties legally terminated the coverage on the Cordoba so as to cut off rights of strangers to that coverage.

■ In answering this question we first note that the policy of insurance between Farmers and Piccarreta was not "canceled." Rather, the policy continued in full force and effect. Merely the subject matter of the coverage was changed. This was completely within the terms of the contract of insurance. The Farmers policy provided coverage for the use of the "described automobile." "Described automobile" is defined by the policy as "the automobile described in the declaration and includes ... a newly acquired automobile and/or a substitute automobile." "Newly acquired automobile" is defined by the policy as:

[A]n automobile, ownership of which is acquired by the named insured, (a) if it *replaces* the described automobile and the named insured *notifies* the Company within thirty days following the date of such acquisition or within the policy term then current, whichever is the longer period of time .... (Emphasis added.)

It is under these terms of the policy that both Farmers and Piccarreta operated in transferring coverage of the Cordoba to the Mustang. Since the policy did not provide what type of notification must be received by the company to activate the "newly acquired automobile" clause, the oral telephone notification by Piccarreta to Farmers' agent Wood would suffice to provide coverage for the 1974 Mustang. *See Western Mut. Ins. Co. v. Wood*, 246 Iowa 1143, 70 N.W.2d 563 (1955).

Erlichman concedes that the oral communication was sufficient to satisfy the notice requirement of the newly acquired automobile provision of the policy and thus bring the 1974 Mustang within the coverage of the Farmers policy. However, he contends that inclusion of the Mustang under the policy does not automatically exclude the Cordoba. We disagree. In our opinion the law is clearly to the contrary. As stated in 6B Appleman, Insurance Law and Practice § 4292, pg. 158 (Buckley ed. 1979):

Where the insurer has consented to a modification of the contract replacing coverage for a previously insured automobile with coverage for a replacement vehicle, the insurer ceases to be liable for operation of the replaced vehicle.

This result is necessary to avoid exposing the insurer to double coverage, that is, insuring two automobiles while receiving a premium based upon a risk of insuring only one. Moreover, since the replaced automobile may pass into the hands of an individual unknown to the insurer, the insurer is not afforded an opportunity to evaluate the additional risks, if any, which may come about by the use of the replaced vehicle by this stranger.

**134**

■ In short, in order to avoid the double coverage and unknown risks to which an insurer may be exposed, "implicit in policy provisions for automatic coverage of replacing vehicles is automatic termination of coverage of replaced vehicles." *National Indem. Co. v. Aanenson*, 264 F.Supp. 408, 411 (D.Minn.1967).

■ We therefore hold that when an insured and insurer orally agree that coverage previously afforded a particular vehicle is to be transferred to another automobile, coverage is automatically terminated as to the replaced vehicle.

The judgment of the trial court is affirmed.

HAIRE, P. J. and EUBANK, J., concur.